**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Case No. 6:23-cv-00553-JCB

**DEFENDANTS' MOTION TO TRANSFER TO THE D.C. CIRCUIT**
**FOR LACK OF SUBJECT-MATTER JURISDICTION**

TABLE OF CONTENTS

BACKGROUND ......................................................................................................................... 1

ARGUMENT .............................................................................................................................. 5

   I.   Jurisdiction to review the Final Rule lies exclusively in the courts of appeals. .................. 5

     A.   The NLRA channels review of final Board orders into the courts of appeals. ................ 6

     B.   Supreme Court and appellate precedent hold that ambiguities in direct-review statutes are construed in favor of circuit-court jurisdiction, absent a firm indication that Congress wanted a matter heard in district court. ................................................................................ 8

     C.   The NLRA's judicial-review provision should be construed to cover final orders enacting rules concerning unfair labor practices. ............................................................... 12

   II.   This case should be transferred to the D.C. Circuit to cure the want of jurisdiction. ........ 15

CONCLUSION.......................................................................................................................... 16

TABLE OF AUTHORITIES

Cases                                                                                   Page(s)

*AFL-CIO v. NLRB*,
    466 F. Supp. 3d 68 (D.D.C. 2020) ....................................................... 12

*Am. Fed'n of Labor v. NLRB*,
    308 U.S. 401 (1940) ......................................................................... 7

*American Federation of Labor & Congress of Industrial Organizations v. NLRB*,
    57 F.4th 1023 (D.C. Cir. 2023) .................................................... 12, 13

*Atorie Air, Inc. v. FAA*,
    942 F.2d 954 (5th Cir. 1991) .............................................................. 10

*Bennett v. Spear*,
    520 U.S. 154 (1997) ......................................................................... 7

*Boire v. Greyhound Corp.*,
    376 U.S. 473 (1964) ......................................................................... 7

*Bokat v. Tidewater Equip. Co.*,
    363 F.2d 667 (5th Cir. 1966) ............................................................. 7

*California Energy Comm'n v. Dep't of Energy*,
    585 F.3d 1143 (9th Cir. 2009) .......................................................... 11

*Citizens Awareness Network, Inc. v. United States*,
    391 F.3d 338 (1st Cir. 2004) ............................................................. 9

*City of Rochester v. Bond*,
    603 F.2d 927 (D.C. Cir. 1979) ................................................... 10, 14

*Florida Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ..................................................................... 8, 9

*Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*,
    764 F.2d 896 (D.C. Cir. 1985) ................................................... 10, 14

*Gunn v. Minton*,
    568 U.S. 251 (2013) ......................................................................... 5

*Harrison v. PPG Indus., Inc.*,
    446 U.S. 578 (1980) ................................................................. 11, 14

*Investment Company Institute v. Board of Governors of the Federal Reserve System*,
   551 F.2d 1270 (D.C. Cir. 1977) ........................................................................ 9, 10

*JTB Tools & Oilfield Servs., L.L.C. v. United States*,
   831 F.3d 597 (5th Cir. 2016) .................................................................................. 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................................. 5

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ................................................................................................. 7

*Liaw Su Teng v. Skaarup Shipping Corp.*,
   743 F.2d 1140 (5th Cir. 1984) ............................................................................... 16

*Ligon v. LaHood*,
   614 F.3d 150 (5th Cir. 2010) ........................................................................... 10, 11

*Loan Syndications & Trading Ass'n v. SEC*,
   818 F.3d 716 (D.C. Cir. 2016) ................................................................................. 9

*Mansfield, C. & L.M. Ry. Co. v. Swan*,
   111 U.S. 379 (1884) ................................................................................................. 5

*Myers v. Bethlehem Shipbuilding Corp.*,
   303 U.S. 41 (1938) ................................................................................................... 7

*N. Am. Soccer League v. NLRB*,
   613 F.2d 1379 (5th Cir. 1980) ................................................................................. 3

*N.Y. Republican State Comm'n v. SEC*,
   70 F. Supp. 3d 362 (D.D.C. 2014) ........................................................................ 10

*N.Y. Republican State Comm'n v. SEC*,
   799 F.3d 1126 (D.C. Cir. 2015) ............................................................................... 9

*Nat. Res. Def. Council v. Abraham*,
   355 F.3d 179 (2d Cir. 2004) .................................................................................. 10

*Nat'l Fed. of the Blind v. DOT*,
   827 F.3d 51 (D.C. Cir. 2016) ................................................................................... 9

*Nat'l Parks & Conservation Ass'n v. FAA*,
   998 F.2d 1523 (10th Cir. 1993) ............................................................................. 10

*Nat'l Parks Conservation Ass'n v. EPA*,
   991 F.3d 681 (5th Cir. 2021) ................................................................................. 16

*Nebraska Public Power Dist. V. United States*,
  590 F.3d 1357 (Fed. Cir. 2010) ................................................................. 9

*Nw. Airlines, Inc .v. Goldschmidt*,
  645 F.2d 1309 (8th Cir. 1981) ................................................................. 10

*Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*,
  145 F.3d 120 (3d Cir. 1998) ................................................................. 11

*Owner-Operators Indep. Drivers Ass'n of Am., Inc. v. Skinner*,
  931 F.2d 582 (9th Cir. 1991) ................................................................. 15

*PPG Indus., Inc. v. Harrison*,
  587 F.2d 237 (5th Cir. 1979) ................................................................. 11

*Republic Aviation Corp. v. NLRB*,
  324 U.S. 793 (1945) ................................................................. 3

*San Diego Air Sports Ctr., Inc. v. FAA*,
  887 F.2d 966 (9th Cir. 1989) ................................................................. 14

*Sima Prods. Corp. v. McLucas*,
  612 F.2d 309 (7th Cir. 1980) ................................................................. 10, 14

*Southland Mower Co. v. U.S. Consumer Product Safety Comm'n*,
  600 F.2d 12 (5th Cir. 1979) ................................................................. 16

*Texas v. United States*,
  328 F. Supp. 3d 662 (S.D. Tex. 2018) ................................................................. 13

*U.S. Steel Corp. v. EPA*,
  595 F.2d 207 (5th Cir. 1979) ................................................................. 11

*United Farm Workers v. Adm'r, EPA*,
  592 F.3d 1080 (9th Cir. 2010) ................................................................. 9

*Wyndham Associates v. Bintliff*,
  398 F.2d 614 (2d Cir. 1968) ................................................................. 16

Statutes

5 U.S.C. §§ 701-706 ................................................................. 5

28 U.S.C. § 1331 ................................................................. 5

28 U.S.C. § 1391(e)(1) ................................................................. 5

28 U.S.C. § 1631 ................................................................. 1, 6, 15

28 U.S.C. § 2112 ....................................................................................... passim

29 U.S.C. § 152(2) ..................................................................................... 3, 6

29 U.S.C. §§ 151-69 ...................................................................................... 1

29 U.S.C. § 156 .......................................................................................... 2, 8

29 U.S.C. § 157 ............................................................................................... 2

29 U.S.C. § 158 .......................................................................................... 2, 3

29 U.S.C. § 159 .......................................................................................... 2, 7

29 U.S.C. § 160 ...................................................................................... passim

29 U.S.C. § 160(j) .......................................................................................... 7

29 U.S.C. § 161(2) .......................................................................................... 7

Regulations

*Joint Employer Status Under the National Labor Relations Act*,
   85 Fed. Reg. 11,184 (Feb. 26, 2020) ..................................................... 4

*Representation-Case Procedures*,
   84 Fed. Reg. 69,524 (Dec. 18, 2019) ................................................... 12

*Standard for Determining Joint Employer Status*,
   88 Fed. Reg. 73,946 (to be codified at 29 C.F.R. § 103.40) ....................... 1, 3, 4, 13

Other Authorities

H.R. Rep. 74-972 ........................................................................................... 8

S. Rep. 74-573 ................................................................................................ 8

Defendants National Labor Relations Board, *et al.* (collectively, "the Board") move pursuant to 28 U.S.C. § 1631 to transfer this case to the United States Court of Appeals for the District of Columbia Circuit. This Court lacks subject-matter jurisdiction over the Complaint for Declaratory and Injunctive Relief filed by Plaintiffs Chamber of Commerce of the United States of America, *et al*. (collectively, "Plaintiffs") because review of the National Labor Relations Board ("NLRB") rule at issue here must occur in a United States court of appeals. And because that very same rule is the subject of a pending petition for review filed in the D.C. Circuit, this case should be transferred to that court of appeals pursuant to 28 U.S.C. § 2112.

## **<u>BACKGROUND</u>**

This case is a facial challenge to a final rule issued by the Board on October 27, 2023. *See* Standard for Determining Joint Employer Status, 88 Fed. Reg. 73,946 (to be codified at 29 C.F.R. § 103.40) ("Final Rule").[1] The Rule establishes a standard for determining whether two or more employers are a joint employer under the National Labor Relations Act ("NLRA" or "the Act"),[2] and will now take effect on February 26, 2024.[3]

The core substantive guarantee of the NLRA is contained in Section 7, which protects most private-sector employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid

---

[1] Compl. ¶ 8, ECF No. 1.

[2] 29 U.S.C. §§ 151-69.

[3] Press Release, NLRB, Board Extends Effective Date of Joint-Employer Rule to February 26, 2024 (Nov. 16, 2023), https://www.nlrb.gov/news-outreach/news-story/board-extends-effective-date-of-joint-employer-rule-to-february-26-2024.

or protection."[4] The NLRB is an independent federal agency created by Congress in 1935 to administer the NLRA. The agency's adjudicatory and rulemaking functions are vested in a five-seat Board, which "is empowered . . . to prevent any person from engaging in any unfair labor practice."[5] While the Board has historically tended to effectuate and interpret the NLRA through case-by-case adjudication, Section 6 gives it the authority to engage in rulemaking "in the manner prescribed by [the Administrative Procedure Act] . . . as may be necessary to carry out the provisions of this Act."[6]

Generally, the Board handles two types of disputes. First, when a question arises whether employees wish to be represented for collective bargaining—typically by a labor union—Section 9 of the Act empowers the Board to investigate and, if necessary, resolve the matter by issuing an appropriate certification.[7] If a union is designated or selected to be the exclusive representative of a unit of employees, the employer and the union are required by statute "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment."[8]

Second, through cases brought by the NLRB's General Counsel under Section 10 of the Act, the NLRA regulates the relationship between employees, their employers, and unions. Section 8 of the Act prohibits both employers and unions from committing a number of general or specific unfair labor practices that interfere with the exercise of Section 7 rights. Examples of

---

[4] 29 U.S.C. § 157. Section 7 also protects employees' "right to refrain from any or all such activities." *Id.*

[5] 29 U.S.C. § 160(a).

[6] 29 U.S.C. § 156.

[7] 29 U.S.C. § 159.

[8] 29 U.S.C. § 158(d).

employer unfair labor practices include, *inter alia*, failing to bargain in good faith with employees' representatives, threatening employees with reprisals for engaging in union activity, and engaging in a host of other behaviors identified by the Board as violative of "the Act's general prohibitory language."[9]

By operation of these statutory provisions, an entity's status as an employer determines whether it has a duty to bargain with a properly designated or selected union and whether it may be held liable for unfair labor practices. Thus, accurately identifying whether an entity qualifies as an employer is critically important. The NLRA defines an "employer" as "any person acting as an agent of an employer, directly or indirectly,"[10] and goes on to define the term employee to "include any employee, and shall not be limited to the employees of a particular employer, unless [the Act] explicitly states otherwise."[11] Employer status is often clear and undisputed, particularly when only one possible employing entity is involved. But in many workplaces, it is commonplace for more than one entity to control, or possess the right to control, certain critical aspects of the employment relationship under which employees perform their labor.[12] In such scenarios, "[t]he existence of a joint employer relationship depends on the control which one employer exercises, or potentially exercises, over the labor relations policy of the other."[13]

---

[9] *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798 (1945); *see* 29 U.S.C. § 158(a).

[10] 29 U.S.C. § 152(2).

[11] *Id*. § 152(3).

[12] *See, e.g.*, Standard for Determining Joint Employer Status, 88 Fed. Reg. 73,946, 73,980 (Oct. 27, 2023) (referring to comments received during the rulemaking which "note that modern business practices often result in multiple firms sharing control over aspects of employees' terms and conditions of employment").

[13] *N. Am. Soccer League v. NLRB*, 613 F.2d 1379, 1382 (5th Cir. 1980).

In 2020, the Board issued a rule that limited joint-employer status to employers that exercised direct and immediate control over terms and conditions of employment;[14] that rule is currently subject to legal challenge.[15] The Final Rule challenged in the instant litigation rescinds and replaces the 2020 rule, and broadens the standard to determine a joint-employer relationship. The Final Rule, like the 2020 rule, applies in both the representation-case and unfair-labor-practice-case contexts, rendering certain individual employers jointly liable for unfair labor practices and obligated to recognize and bargain with a union.[16] In the new Rule, the Board explains it will "give determinative weight to the existence of a putative joint employer's authority to control essential terms and conditions of employment, whether or not such control is exercised, and without regard to whether any such exercise of control is direct or indirect, such as through an intermediary."[17] The Board further determined that its 2020 rule is "contrary to the common-law agency principles that must govern the joint-employer standard under the Act and that the Board has no statutory authority to adopt such a requirement."[18]

On November 6, 2023, the Service Employees International Union (SEIU) filed a Petition for Review of the Final Rule in the United States Court of Appeals for the D.C. Circuit (Case No. 23-1309).[19] On November 9, Plaintiffs filed their Complaint in the instant case, in which they

---

[14] Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11,184 (Feb. 26, 2020).

[15] *SEIU v. NLRB et al.*, 21-cv-02443 (D.D.C.). Prior to any party taking positions on jurisdiction or the underlying merits, the court stayed that litigation based on the Board's stated intent to revisit the 2020 rule. *See* Minute Order Granting Plaintiff's and Defendant's Joint Motion to Stay, dated Jan. 6, 2022. The case currently remains stayed until January 10, 2024. Minute Order Granting Unopposed Motion for Further Extension of Litigation Stay, dated Nov. 16, 2023.

[16] 88 Fed. Reg. at 73,957; 85 Fed. Reg. at 11,188.

[17] 88 Fed. Reg. at 73,948.

[18] *Id.*

[19] *See* Defs.' Notice of Related Case, ECF No. 15.

request that the Court declare the Final Rule unlawful and enjoin the Board from enforcing it against their members.[20]

## ARGUMENT

Plaintiffs allege that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. §§ 701-706 (the Administrative Procedure Act).[21] They further allege that venue is proper in this district under 28 U.S.C. § 1391(e)(1), based on claimed connections to the Eastern District of Texas.[22] But Section 10(f) of the NLRA directs judicial review of any final unfair-labor-practice "order"—a term that, as explained below, courts have deemed broad enough to encompass rules issued after notice and comment—to the circuit courts of appeals, not the district courts.[23] Accordingly, because this case may only be brought as a petition for review in a circuit court of appeals, Plaintiffs are in the wrong court. However, the interest of justice counsels for transfer rather than dismissal, and pursuant to 28 U.S.C. § 2112, these proceedings must be transferred to the D.C. Circuit for likely consolidation with the SEIU's challenge to the same Final Rule.

## I.     Jurisdiction to review the Final Rule lies exclusively in the courts of appeals.

Federal courts have limited jurisdiction and possess "only that power authorized by Constitution and Statute."[24] The rule that a federal court may not proceed where it lacks subject-matter jurisdiction "is inflexible and without exception."[25] Consequently, a court's initial task in

---

[20] Compl. ¶¶ 20, 21.

[21] Compl. ¶ 9.

[22] Compl. ¶ 13.

[23] 29 U.S.C.§ 160(f).

[24] *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[25] *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884).

any action is to ascertain whether its jurisdiction extends to the issue in question, including whether the matter must be raised before an alternate forum. Under 28 U.S.C. § 1631, if the court concludes jurisdiction is lacking, it "shall" transfer the action to another court where the action could have been brought "if it is in the interest of justice."[26] The transferred action should then proceed as if it had been filed in the proper court.[27]

Although the text of the NLRA's rulemaking provision, Section 6, does not address where judicial review of final Board rules should occur, Section 10 channels review of final Board orders to the courts of appeals. Moreover, precedent from the Supreme Court, Fifth Circuit, and other federal courts requires that ambiguities in direct-circuit-review statutes be construed in favor of circuit-court jurisdiction. As explained below, applying these precedents to the ambiguities in Section 10 leads to the conclusion that review of final Board rules—at least those involving unfair labor practices—must occur in the courts of appeals.

### A.  The NLRA channels review of final Board orders into the courts of appeals.

Through the enactment of the NLRA in 1935, Congress determined that the Board would have exclusive authority to prevent "any person" from engaging in unfair labor practices and that the courts of appeals would have exclusive jurisdiction to review final Board orders.[28] The NLRA's direct-review provision is codified in Section 10(f), which reads in relevant part:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia . . .[29]

---

[26] 28 U.S.C. § 1631.

[27] *Id.*

[28] 29 U.S.C. §§ 152(2), 160(f).

[29] 29 U.S.C. § 160(f).

And a corollary provision in Section 10(e) empowers the Board "to petition any court of appeals of the United States" to enforce its orders.[30]

In addition to vesting the courts of appeals with jurisdiction over final agency action, Congress also severely circumscribed district court involvement in the NLRA's statutory scheme. District courts have jurisdiction over NLRA matters in just two narrow and specific categories of cases, neither of which is applicable here (enforcement of subpoenas and *pendente lite* injunctions).[31] Indeed, even the Board's representation-case orders (denoted in the NLRA as "certifications"[32]) are not reviewable in the courts of appeals unless and until those certifications become the basis for final Board orders in an unfair-labor-practice case.[33] In short, review of final Board action involving unfair labor practices is lodged exclusively in the circuit courts.[34]

The textual requirements of Section 10(f) are met here, as the Final Rule is a "final order of the Board"[35] and denies "relief sought" by various Plaintiffs in their comments during the rulemaking process. But Plaintiffs may claim that Section 10(f) does not apply to rulemakings, and indeed the NLRA does not expressly answer that question. The grant of the Board's rulemaking power in Section 6 provides no guidance as to the jurisdictional locus of judicial

---

[30] 29 U.S.C. § 160(e).

[31] *See* 29 U.S.C. §§ 160(j), 161(2); *accord Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) ("District Courts . . . have a very very minor role to play in this statutory structure"). Importantly, each of those conferrals of district-court jurisdiction may be invoked only by the NLRB itself.

[32] *See* 29 U.S.C. § 159(c), (d).

[33] *Am. Fed'n of Labor v. NLRB*, 308 U.S. 401, 408-09 (1940); *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 476-77 (1964). There are certain extraordinary exceptions to that rule, not relevant here. *See, e.g.*, *Leedom v. Kyne*, 358 U.S. 184, 190 (1958) (permitting district court review where a complete "absence of jurisdiction [in] the federal courts [would] mean a sacrifice or obliteration of a right which Congress has created") (quoting reference omitted).

[34] *See generally Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48, 51 (1938).

[35] *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (discussing the hallmarks of finality).

7

review. That section simply states: "[t]he Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by the Administrative Procedure Act [subchapter II of chapter 5 of title 5], such rules and regulations as may be necessary to carry out the provisions of [the NLRA]."[36] Nor does the NLRA otherwise define or address the term "order" as used in Section 10(f). Its legislative history does not speak to the matter.[37] As explained below, we therefore apply the relevant interpretive canons to confirm the conclusion that Section 10(f), with its limitation on judicial review exclusively in the courts of appeals, applies to rulemaking.

### B. Supreme Court and appellate precedent hold that ambiguities in direct-review statutes are construed in favor of circuit-court jurisdiction, absent a firm indication that Congress wanted a matter heard in district court.

In *Florida Power & Light Co. v. Lorion*,[38] the Supreme Court announced a presumption favoring circuit-court review where an agency's organic statute's direct-review provision so provides. In that case, the Court considered certain "problematic" and "vexing" ambiguities in the statutory sections governing review of final orders issued by the Nuclear Regulatory Commission.[39] The Court held that where the application of a direct-review statute channels review of an agency's actions to the circuit courts, but is ambiguous in its scope, direct review in the circuit courts is appropriate absent a "firm indication" that Congress intended otherwise.[40] To determine congressional intent, the Court sought "guidance in the statutory structure, relevant

---

[36] 29 U.S.C. § 156.

[37] See, e.g., S. Rep. 74-573 (1935), reprinted in 2 NLRB, Legislative History of the National Labor Relations Act, 1935, at 2300, 2305 (1949); H.R. Rep. 74-972 (1935), reprinted in 2 Legislative History of the National Labor Relations Act, 1935, at 2956, 2960 (same).

[38] 470 U.S. 729 (1985).

[39] *Id.* at 736.

[40] *Id.* at 745.

legislative history, congressional purposes expressed in the choice of [statutorily described process for] review, and general principles respecting the proper allocation of judicial authority to review agency orders."[41] In harmony with the *Lorion* presumption, the First Circuit has instructed that "jurisdictional statutes should be construed so that agency actions will always be subject to initial review in the same court, regardless of the procedural package in which they are wrapped."[42]

Given this precedent, it is now considered "blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules."[43] Indeed, "absent contrary congressional intent, a statutory provision creating a right of direct judicial review in the court of appeals of an administrative 'order' authorizes such review of any agency action that is otherwise susceptible of review on the basis of the administrative record alone."[44]

Consistent with this presumption "interpret[ing] ambiguities in direct-review statutes in favor of appellate jurisdiction,"[45] federal courts have, without hesitation, interpreted generalized direct-review statutes broadly to encompass most final agency actions.[46] For example, in *Investment Company Institute v. Board of Governors of the Federal Reserve System* ("*Investment*

---

[41] *Id*. at 737.

[42] *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 347 (1st Cir. 2004).

[43] *N.Y. Republican State Comm'n v. SEC*, 799 F.3d 1126, 1129-30 (D.C. Cir. 2015) ("*NYRSC II*"); *Nat'l Fed. of the Blind v. DOT*, 827 F.3d 51, 55 (D.C. Cir. 2016); *see also* 33 Charles A. Wright & Charles H. Koch, Jr., Federal Practice & Procedure § 8299 (2006) (internal quotation omitted).

[44] *NYRSC II*, 799 F.3d at 1131; *see also Nat'l Fed. of the Blind*, 827 F.3d at 55.

[45] *Loan Syndications & Trading Ass'n v. SEC*, 818 F.3d 716, 720 (D.C. Cir. 2016).

[46] *Id.*; *United Farm Workers v. Adm'r, EPA*, 592 F.3d 1080, 1083–84 (9th Cir. 2010) (same); *Nebraska Public Power Dist. V. United States*, 590 F.3d 1357, 1367 (Fed. Cir. 2010) ("When there is a question whether judicial review was meant to be in district courts or courts of appeals, that ambiguity is resolved in favor of court of appeals review") (collecting cases).

*Company*"),[47] the D.C. Circuit construed the term "order" within a judicial-review provision to encompass rulemaking.[48] Since *Investment Company*, the D.C. Circuit and other circuit courts have exercised direct review of agency rules promulgated under multiple other statutes that contained similar direct appellate review authority.[49]

Consistent with *Lorion* and the other caselaw cited above, the Fifth Circuit has generally interpreted direct-review statutes as broadly as Congressional intent would allow. For example, in cases interpreting the term "order" in the Federal Aviation Act ("FAA"), the Fifth Circuit has afforded the term an "expansive construction."[50] In so doing, the court has "focused on both the finality of the [agency] action and the adequacy of the record to support judicial review."[51] The court thus has interpreted "order" under the FAA to encompass all agency decisions which are

---

[47] 551 F.2d 1270 (D.C. Cir. 1977).

[48] *Id*. at 1278 ("the purposes underlying [the direct-review provision] will best be served if 'order' is interpreted to mean any agency action capable of review on the basis of the administrative record").

[49] *N.Y. Republican State Comm'n v. SEC*, 70 F. Supp. 3d 362, 370-71 (D.D.C. 2014) ("*NYRSC I*"), *aff'd*, *NYRSC II*, 799 F.3d at 1129-30 (Investment Advisers Act of 1940); *Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*, 764 F.2d 896, 903 & n.37 (D.C. Cir. 1985) (Waste Act of 1982); *City of Rochester v. Bond*, 603 F.2d 927, 932-35 (D.C. Cir. 1979) (Federal Aviation Act and Communications Act of 1934); *Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1526-28 (10th Cir. 1993) (Federal Aviation Act); *Nw. Airlines, Inc .v. Goldschmidt*, 645 F.2d 1309, 1314 (8th Cir. 1981) (following *Investment Company*); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312–14 (7th Cir. 1980) (relying extensively on *Investment Company* to review regulation promulgated under the Federal Aviation Act); *see also Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 193-94 (2d Cir. 2004) (reasoning that "[r]ulemaking proceedings do not ordinarily necessitate additional factfinding by a district court to effectuate the review process," such that a direct-review provision covering rules properly covered agency actions delaying regulatory effective dates).

[50] *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991) (citing *San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 968 (9th Cir. 1989)); *accord Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010).

[51] *Atorie Air*, 942 F.2d at 960.

final because an obligation is imposed or a legal relationship is fixed.[52]

The Fifth Circuit has taken a similar approach in cases determining jurisdiction to review various actions of the Environmental Protection Agency, exercising direct review where a sufficient record exists for appellate consideration. Specifically, the court has held that where there was no need for fact finding because the challenged agency regulation was "based on a substantial record" and will "have general effect in the specified areas," the challenge should proceed in circuit court.[53]

More recently, in *JTB Tools & Oilfield Servs., L.L.C. v. United States*,[54] the Fifth Circuit, relying upon decisions by the D.C. Circuit and Third Circuit, found that provisions of the OSH Act vesting exclusive jurisdiction in the courts of appeals over agency actions "necessarily" granted "exclusive jurisdiction to review *inaction* as well."[55]

Thus, although the Fifth Circuit has not squarely faced the present issue of whether direct-review provisions referring to "orders" encompass agency rules, its case law accords with the standard adopted by other circuits—i.e., that review properly lies in the courts of appeals

---

[52] *See id.*; *Ligon*, 614 F.3d at 154.

[53] *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 212 (5th Cir. 1979). The Fifth Circuit considered the adequacy of the administrative record in another pre-*Lorion* case, *PPG Indus., Inc. v. Harrison*, and concluded that the agency action's "skeletal record" was not suitable for appellate review. 587 F.2d 237, 244 (5th Cir. 1979). However, the Supreme Court reversed that decision as unsupported by legislative intent. *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 587-89 (1980) (finding "any other final action" is "expansive language" that should be read broadly, not narrowly, absent contrary legislative history); *see also id.* at 593 ("The most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal."). Courts continue to consider "judicial economy" and the adequacy of the record in construing the scope of direct-review statutes. *E.g.*, *California Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1148-50 (9th Cir. 2009).

[54] 831 F.3d 597 (5th Cir. 2016).

[55] *Id.* at 600 (emphasis added) (quoting and relying on *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 122–23 (3d Cir. 1998), which in turn relied on *Action on Smoking & Health v. Dep't of Labor*, 28 F.3d 162, 163–64 (D.C. Cir. 1994)).

where the scope of the review provision is ambiguous, and there is neither a need for further fact-finding nor countervailing considerations firmly evincing a contrary congressional intent.

### C. The NLRA's judicial-review provision should be construed to cover final orders enacting rules concerning unfair labor practices.

Consistent with the above principles, the D.C. Circuit has found that Section 10(f) of the NLRA is broad enough to encompass review of regulations. In *American Federation of Labor & Congress of Industrial Organizations v. NLRB ("AFL-CIO")*,[56] that court construed Section 10(f) as "provid[ing] direct review in federal appellate courts of at least some 'final order[s] of the Board.'"[57] The rule in question there—Representation-Case Procedures, 84 Fed. Reg. 69,524 (Dec. 18, 2019)—exclusively concerned the Board's processing of representation cases under Section 9 of the Act. The circuit court explained that when Congress enacted the NLRA, Congress spoke of "orders" as shorthand for final agency action, including rules.[58]

The district court, in the underlying proceeding, construed Section 10(f) to find that "what is being directed to the court of appeals for direct-review per the text of the statute is NLRB actions concerning the 'unfair labor practice in question'—a textual reference that strongly suggests that the provision is only triggered when some kind of unfair labor practice is at issue."[59] The circuit court agreed, finding that "[t]he statutory phrase defining appellate-court venue options by reference to '*the* unfair labor practice *in question*,' a specific iteration of a broader category, implies that the overall provision's object is that category—unfair

---

[56] 57 F.4th 1023 (D.C. Cir. 2023).

[57] *Id*. at 1031(quoting 29 U.S.C. § 160(f)).

[58] *Id.* (citing cases).

[59] *AFL-CIO v. NLRB*, 466 F. Supp. 3d 68, 84 (D.D.C. 2020).

labor practices—which does not include NLRA rules regarding representation elections."[60] Although the D.C. Circuit found that rules that solely govern representation cases must be challenged first in district courts, it also clarified that Board final orders (including rules) pertaining to unfair labor practices should be directly reviewed in the courts of appeals.[61] Thus, "subsection 10(f) communicates that what is being directed to the court of appeals for the purpose of direct review is NLRB final orders (and, per binding precedent, *rules*) *concerning unfair labor practices*."[62]

This Court should follow the same reasoning as the D.C. Circuit to establish that Section 10(f) review is controlling as to the Final Rule.[63] *Investment Company*, *Lorion*, and these cases' progeny make clear that Section 10(f) requires that review of any final NLRB action pertaining to unfair labor practices, including rulemakings, should occur at the circuit-court level. The Final Rule satisfies that straightforward rubric because it alters the substantive law of bargaining obligations and derivative liability, thus affecting the adjudication of unfair labor practices under Section 8(a). Indeed, the Final Rule applies "for all purposes under the Act"[64] and will determine the extent to which separate entities may be found jointly and severally liable for the commission of unfair labor practices by the other. Plaintiffs concede this, averring in multiple instances that the Final Rule sets forth a test "of employer liability" and "imposes joint-and-several liability" including in "suits for injunctive

---

[60] *AFL-CIO*, 57 F.4th at 1032 (emphasis in original).

[61] *Id.* at 1031.

[62] *Id.* at 1032 (cleaned up and emphasis added).

[63] As the Southern District of Texas noted in *Texas v. United States*, 328 F. Supp. 3d 662, 730 (S.D. Tex. 2018), "[d]ue to its location and resulting docket, the D.C. Circuit has long been looked to in the field of administrative law."

[64] 88 Fed. Reg. at 73,982, 74,017.

relief and monetary penalties."[65] Thus, the connection between the Board's joint-employer doctrine and adjudication of unfair-labor-practice cases is undisputed.

Several features of the instant proceeding confirm that reading Section 10(f) to encompass review of the Final Rule is the proper interpretation. Initially, the administrative record in this case is aptly suited for appellate review. There is no need for the discovery and trial functions that characterize district-court proceedings; summary judgment will be based entirely on the administrative record.

Further, allowing this challenge to proceed in this district court, as preferred by Plaintiffs, while the SEIU's challenge proceeds in the D.C. Circuit, creates the possibility of duplicative and conflicting decisions on the Final Rule, which is exactly what 28 U.S.C. § 2112 seeks to avoid, as discussed further in Section II, below.[66] This problem underscores the very reason for construing direct-review provisions broadly instead of narrowly: "the purposes of special review statutes—coherence and economy—are best served if courts of appeals exercise their exclusive jurisdiction over final agency actions."[67] Holding in this case that Section 10(f) does not apply to the Final Rule would conflict with the broad reading that the Fifth Circuit has given direct-review provisions channeling judicial review of agency actions to the courts of appeals. It would "encourage circumvention of Congress's particular jurisdictional assignment. It would also result

---

[65] Compl. ¶ 32; *see also id.* ¶¶ 11, 14, 32, 58(a)-(e), 61, 62.

[66] *See generally Harrison v. PPG Indus., Inc.*, 446 U.S. at 593 ("The most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal"); *see also Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*, 764 F.2d 896, 903 (D.C. Cir.1985) ("exclusive jurisdiction in the court of appeals avoids duplicative review and the attendant delay and expense involved") (collecting cases).

[67] *Sima Prod. Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir. 1980) (citing *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979)); *accord San Diego Air Sports Center, Inc. v. FAA*, 887 F.2d at 968 (9th Cir. 1989).

in fractured judicial review of agency decisions, with all of its attendant confusion, delay, and expense."[68]

The explicit text of Section 10(f) should be followed. That section mandates that judicial review of the Final Rule—as a final Board order pertaining to unfair labor practices—occur in the courts of appeals, rather than the district courts. The adequacy of the record to be considered on review, the lack of a need to develop facts independent of that record, and delay-avoidance considerations reinforce the correctness of that conclusion.

## II.     This case should be transferred to the D.C. Circuit to cure the want of jurisdiction.

As demonstrated above, Plaintiffs have brought this action in the wrong court because jurisdiction to hear this suit lies in the courts of appeals under Section 10(f) of the Act. Nonetheless, under Section 1631, where this Court lacks jurisdiction, it "shall" transfer an action to another court when doing so "is in the interest of justice."[69] Defendants submit that the interest of justice warrants transfer, as opposed to dismissal, because transfer would expedite resolution of Plaintiffs' claims and avoid any prejudice to Plaintiffs.

This case should be transferred to the D.C. Circuit, as mandated by 28 U.S.C. § 2112. (Section 2112 procedures apply because this case should have originated in the circuit court of appeals, not district court, as explained in Section I, above.) Under Section 2112(a)(1), the agency is required to file the administrative record in the circuit in which a challenge to the administrative action is initially filed—which in this case is the D.C. Circuit, where the SEIU filed a challenge filed to this Final Rule on November 6, 2023.[70] And under Section 2112(a)(5),

---

[68] *Owner-Operators Indep. Drivers Ass'n of Am., Inc. v. Skinner*, 931 F.2d 582, 589 (9th Cir. 1991).

[69] 28 U.S.C. § 1631.

[70] *See* Defs.' Notice of Related Case, ECF No. 15.

all other courts in which challenges are filed—such as this Court—"shall transfer those proceedings to the court in which the record is so filed." Accordingly, a straightforward application of this statute mandates transfer to the D.C. Circuit.[71]

Consolidating these matters in one court not only promotes efficiency but also aligns with the broader interest of streamlining the adjudication process, and ensuring a single, comprehensive, and cohesive determination of the issues related to the joint-employer standard.[72]  Indeed, inconsistent results would create a lack of clarity for the public—including both unions and employers—in determining unfair-labor-practice liability under the Act. As the interest of justice requires that this case be transferred, and under Section 2112, venue is only proper in the D.C. Circuit, this Court should transfer the instant case to that court.

## **CONCLUSION**

For the reasons provided, the Board respectfully requests that this Court transfer this case to the D.C. Circuit Court of Appeals. A proposed order is attached.

---

[71] *Southland Mower Co. v. U.S. Consumer Product Safety Comm'n*, 600 F.2d 12, 14 (5th Cir. 1979) (noting Section 2112 enacted "a mechanical, first filing approach" to determining venue); *accord Nat'l Parks Conservation Ass'n v. EPA*, 991 F.3d 681, 684 (5th Cir. 2021) (noting that the Fifth Circuit employ[s] a first-filed rule "much like that set forth in § 2112, when faced with a competing challenge to the same administrative action in another court of appeals").

[72] *See, e.g.*, *Nat'l Parks Conservation Ass'n*, 991 F.3d at 684 (noting the need "to avoid the risk of conflicting decisions from continuing parallel litigation"); *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1149 (5th Cir. 1984) (noting the "possible detriment of inconsistent results" were the case to be litigated in parallel in two distinct fora); *Wyndham Associates v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968) (stating that "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that . . . inconsistent results can be avoided.").

Respectfully submitted,

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
(No official bar number in Maryland)
Tel: (202) 273-2938
kevin.flanagan@nlrb.gov

/s/ Christine Flack
CHRISTINE FLACK
*Supervisory Attorney*
(No official bar number in Maryland)
Tel: (202) 273-2842
christine.flack@nlrb.gov

TYLER J. WIESE
*Senior Attorney*
Minnesota Bar No. 0329601
Tel: (952) 703-2891
tyler.wiese@nlrb.gov

SHAWNNELL T. BARNETT
*Attorney*
DC Bar No. 1531575
Tel: (202) 316-6397
shawnnell.barnett@nlrb.gov

ELISABETH H. CAMPBELL
*Attorney*
NYS Bar Reg. No. 5935325
Tel: (202) 273-0121
elisabeth.campbell@nlrb.gov

National Labor Relations Board
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE
Washington, DC 20003
Fax: (202) 273-4244

*Attorneys for Defendants*

Dated: November 20, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 20, 2023, I filed the foregoing document with this Court using the CM/ECF filing system, and a copy is being served on the ECF Filers electronically by the Notice of Docket activity.

/s/ Christine Flack
CHRISTINE FLACK
*Supervisory Attorney*
(No official bar number in Maryland)
Tel: (202) 273-2842
Fax: (202) 273-4244
christine.flack@nlrb.gov

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to the meet and confer requirement in Local Rule CV-7(h), the undersigned certifies that on November 13, 2023, the undersigned, joined by Deputy Associate General Counsel Dawn Goldstein, and attorneys Shawnell Barnett and Elisabeth Campbell, attended a video conference call with Plaintiff's counsel, Pratik Shah, James Tysse, James Crowley, and Margaret Rusconi. The undersigned informed Plaintiffs counsel of Defendants' intent to file the instant Motion to Transfer and stated their position regarding jurisdiction and transfer of this case. The undersigned sought Plaintiffs position on consent to transfer to the D.C. Circuit, Plaintiffs' counsel declined, and the parties were unable to reach agreement.

/s/ Christine Flack
CHRISTINE FLACK
*Supervisory Attorney*
(No official bar number in Maryland)
Tel: (202) 273-2842
Fax: (202) 273-4244
christine.flack@nlrb.gov
