**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD *et al.*, <br><br> Defendants. | Civil Action No. 6:23-cv-553 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**<u>MOTION TO TRANSFER</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................7

BACKGROUND ..................................................................................................8

ARGUMENT ......................................................................................................9

I.     DISTRICT COURTS GENERALLY EXERCISE ORIGINAL JURISDICTION OVER APA CHALLENGES .........................................9

II.    SECTION 10(F) OF THE NLRA DOES NOT DISPLACE THE DEFAULT RULE FOR RULEMAKING CHALLENGES ......................................10

    A.    The Text Of Section 10(f) Limits Direct Appellate Review To Orders Resolving Unfair Labor Practice Cases .........................................10

    B.    Section 10's Structure Confirms Subsection (f)'s Limited Reach ..................13

    C.    Consistent Historical And Modern Practice Reflect The Same Interpretation ...............................................................................15

III.   THE BOARD'S CONTRARY ARGUMENTS ARE UNPERSUASIVE ...............18

    A.    The Scope Of Section 10(f) Is Unambiguous ..................................18

    B.    The Statute's Text, Not The D.C. Circuit's Musings, Controls......................19

CONCLUSION....................................................................................................21

ADDENDUM

    29 U.S.C. § 156..................................................................................Add. 1

    29 U.S.C. § 157..................................................................................Add. 1

    29 U.S.C. § 158..................................................................................Add. 1

    29 U.S.C. § 159..................................................................................Add. 7

    29 U.S.C. § 160..................................................................................Add. 9

# TABLE OF AUTHORITIES

**CASES:**

*ABC of Tex., Inc. v. NLRB,*
No. 1-15-CV-26 RP, 2015 WL 3609116 (W.D. Tex. 2015) ..................................................15
826 F.3d 215 (5th Cir. 2016) ...............................................................................................15

*AFL-CIO v. NLRB,*
466 F. Supp. 3d 68 (D.D.C. 2020)...........................................................................10, 12, 20
57 F.4th 1023 (D.C. Cir. 2023)...................................................................................19, 20, 21

*Am. Hosp. Ass'n v. NLRB,*
718 F. Supp. 704 (N.D. Ill. 1989) ........................................................................................16
899 F.2d 651 (7th Cir. 1990) ...............................................................................................16
499 U.S. 606 (1991)...............................................................................................................16

*American Fed'n of Lab. v. NLRB,*
308 U.S. 401 (1940)........................................................................................................13, 16

*Atorie Air, Inc. v. FAA,*
942 F.2d 954 (5th Cir. 1991) ...............................................................................................18

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023).................................................................................................................9

*Chamber of Com. of U.S. v. Dep't of Labor,*
885 F.3d 360 (5th Cir. 2018) ...............................................................................................17

*Chamber of Com. of U.S. v. NLRB,*
118 F. Supp. 3d 171 (D.D.C. 2015) .....................................................................................16

*Chamber of Com. of U.S. v. NLRB,*
856 F. Supp. 2d 778 (D.S.C. 2012).......................................................................................15
721 F.3d 152 (4th Cir. 2013) ...............................................................................................15

*Chamber of Com. of U.S. v. NLRB,*
879 F. Supp. 2d 18 (D.D.C. 2012)........................................................................................16

*Cochran v. SEC,*
20 F.4th 194 (5th Cir. 2021) ..................................................................................................9

*Epic Sys. Corp. v. Lewis,*
138 S. Ct. 1612 (2018)...........................................................................................................15

*Feds for Med. Freedom v. Biden,*
63 F.4th 366 (5th Cir. 2023) ..................................................................................................9

*Florida Power & Light Co. v Lorion*,
  470 U.S. 729 (1985).................................................................................18, 19

*Hughes Tool Co. v. NLRB*,
  147 F.2d 69 (5th Cir. 1945) ..............................................................................8

*Inland Container Corp. v. NLRB*,
  137 F.2d 642 (6th Cir. 1943) ...........................................................................16

*International Ladies' Garment Workers Union, Local 415-475 v. NLRB*,
  501 F.2d 823 (D.C. Cir. 1974).........................................................................16

*Investment Co. Inst. v. Board of Governors of Fed. Rsrv. Sys.*,
  551 F.2d 1270 (D.C. Cir. 1977)........................................................................19

*JTB Tools & Oilfield Servs., L.L.C. v. United States*,
  831 F.3d 597 (5th Cir. 2016) ...........................................................................18

*Laundry Workers Int'l Union, Loc. 221 v. NLRB*,
  197 F.2d 701 (5th Cir. 1952) .....................................................................11, 16

*Ligon v. LaHood*,
  614 F.3d 150 (5th Cir. 2010) ...........................................................................18

*Loan Syndications & Trading Ass'n v. SEC*,
  818 F.3d 716 (D.C. Cir. 2016).........................................................................18

*Louisiana Chem. Ass'n v. Bingham*,
  657 F.2d 777 (5th Cir. 1981) ...........................................................................21

*Manhattan Constr. Co. v. NLRB*,
  198 F.2d 320 (10th Cir. 1952) .........................................................................16

*Murphy Oil USA, Inc. v. NLRB*,
  808 F.3d 1013 (5th Cir. 2015) .........................................................................15

*National Ass'n of Mfrs. v. NLRB*,
  846 F. Supp. 2d 34 (D.D.C. 2012)....................................................................15
  717 F.3d 947 (D.C. Cir. 2013).........................................................................15

*National Auto. Dealers Ass'n v. FTC*,
  670 F.3d 268 (D.C. Cir. 2012)......................................................................9, 19

*Natural Res. Def. Council, Inc. v. EPA*,
  966 F.2d 1292 (9th Cir. 1992) .........................................................................13

*NLRB v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*,
  484 U.S. 112 (1987).....................................................................................8, 16

*SEC v. McCarthy,*
  322 F.3d 650 (9th Cir. 2003) ...................................................................12

*Select Specialty Hosp.-Akron, LLC v. Sebelius,*
  820 F. Supp. 2d 13 (D.D.C. 2011) .........................................................13

*Shell Chem. Co. v. NLRB,*
  495 F.2d 1116 (5th Cir. 1974) .............................................................7, 11

*Sierra Club v. Peterson,*
  185 F.3d 349 (5th Cir. 1999) ..................................................................11

*Slack Techs., LLC v. Pirani,*
  598 U.S. 759 (2023)..................................................................................15

*U.S. Steel Corp. v. EPA,*
  595 F.2d 207 (5th Cir. 1979) ..................................................................18

*United Nat. Foods, Inc. v. NLRB,*
  66 F.4th 536 (5th Cir. 2023) ........................................................7, 15, 16

*Watts v. SEC,*
  482 F.3d 501 (D.C. Cir. 2007) .........................................................10, 11

*Williams v. Taylor Seidenbach, Inc.,*
  958 F.3d 341 (5th Cir. 2020) ....................................................................9

## STATUTES:

5 U.S.C.
  § 551(6)....................................................................................................11
  § 702..........................................................................................................9

28 U.S.C.
  § 1331................................................................................................7, 8, 9
  § 2112(d).....................................................................................................8

29 U.S.C.
   § 156 ................................................................................................................8
   § 157 ................................................................................................................8
   § 158 ................................................................................................................8
   § 159 ................................................................................................................8
   § 160 ..........................................................................................................8, 10
   § 160(a) .........................................................................................................14
   § 160(b) ...................................................................................................12, 14
   § 160(c) ..........................................................................................13, 14, 15
   § 160(d) ...................................................................................................14, 15
   § 160(e) ...................................................................................................14, 15
   § 160(f) ................................................................................................... *passim*

## OTHER AUTHORITIES:

29 C.F.R.
   § 101.14 ...................................................................................................14, 17
   § 103.40 ..........................................................................................................8

84 Fed. Reg. 69,524 (Dec. 18, 2019) .....................................................................20, 21

88 Fed. Reg. 73,946 (Oct. 27, 2023) .......................................................................8, 20

BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................................12, 13

Agency Court Filings, National Labor Relations Board (last visited Nov. 30,
   2023) ...........................................................................................................17

Contempt, Compliance, and Special Litigation Branch Briefs, National Labor
   Relations Board (last visited Nov. 30, 2023) ...........................................................17

## INTRODUCTION

In the 88 years since Congress created the National Labor Relations Board, not one challenge to Board rulemaking has been heard first in a court of appeals.  This is not by mistake but by design.  Congress provided in 28 U.S.C. § 1331 that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  And nothing in the National Labor Relations Act (NLRA) displaces that default rule when it comes to Administrative Procedure Act (APA) challenges to Board rulemaking.  Although the NLRA provides for direct review of "a final order of the Board," the Fifth Circuit has repeatedly recognized—in line with the surrounding statutory text and the Board's own prior arguments— that the phrase "refers *solely* to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found."  *United Nat. Foods, Inc. v. NLRB*, 66 F.4th 536, 540 (5th Cir. 2023) (quoting *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1120 (5th Cir. 1974)) (emphasis added).  The NLRA's direct-review provision simply does not apply to Board rulemakings.

The Board now argues otherwise, but red flags abound.  The Board's theory rests on a section of the NLRA the Board never quotes or analyzes as a whole.  The Board immediately urges the Court to find "ambiguities," before trying to explain why its construction is correct.  And the Board points to zero historical practice of direct circuit-court review of its rulemakings in the nine decades since 1935.  If the NLRA in fact requires direct circuit-court review of Board rulemaking, one would expect someone to have sought such review before now.  Yet the Board's lone example is the parallel D.C. Circuit petition for review of the rule at issue here—a petition conveniently filed last month by a union that *supports* the rule and whose suit against the Board's previous joint employer rule remains pending in *district* court.

All in all, the Board points to no language in the NLRA that divests this Court of the jurisdiction Congress said it "shall" have. 28 U.S.C. § 1331. The Court should thus deny the Board's motion to transfer. *See id.* § 2112(d) (requirement to transfer a case to the court of appeals does not apply if jurisdiction lies in the district courts).

## BACKGROUND

The "avowed object" of the NLRA "is to protect commerce by establishing and preserving for employees a right of collective bargaining through a representative of their choosing." *Hughes Tool Co. v. NLRB*, 147 F.2d 69, 72 (5th Cir. 1945). The Act goes about that objective in several ways. Section 7 establishes employees' rights. 29 U.S.C. § 157. Section 9 outlines the procedures for exercising them through selecting a representative. *Id.* § 159. Section 8, in turn, makes it an "unfair labor practice" for an employer to interfere with its employees' section 7 rights. *Id.* § 158. And section 10 describes "the procedures [the Board] must follow to decide unfair labor practice cases." *NLRB v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 124 (1987); 29 U.S.C. § 160. The NLRA also grants the Board general rulemaking authority in section 6, but that section says nothing about judicial review. *See* 29 U.S.C. § 156.

Notably, only section 10 provides for direct review of Board action in a court of appeals. Specifically, section 10(f) allows "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought" to "obtain review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in." 29 U.S.C. § 160(f).

In this case, no "unfair labor practice" has been alleged to have been committed and no "relief" has been "sought" by any person. Rather, Plaintiffs challenge under the APA a prospective rule the Board promulgated pursuant to its section 6 rulemaking authority. *See* Standard for Determining Joint Employer Status, 88 Fed. Reg. 73,946, 73,956 (Oct. 27, 2023) (codified at 29

C.F.R. § 103.40) ("Joint Employer Rule").  Plaintiffs thus did what every other plaintiff to challenge a Board rule has done in the history of the NLRA (until a few weeks ago):  they filed suit in district court.

Although the Service Employees International Union (SEIU) filed a challenge to the Board's prior Joint Employer Rule in the U.S. District Court for the District of Columbia, *SEIU v. NLRB et al.*, No. 21-cv-2443-RC (D.D.C. filed September 17, 2021), it elected to file a challenge to the Board's latest Joint Employer Rule directly in the D.C. Circuit, *SEIU v. NLRB et al.*, No. 23-1309 (D.C. Cir. filed November 6, 2023).

Shortly thereafter, the Board moved to transfer this action to the D.C. Circuit on the ground that the NLRA has been misinterpreted throughout its entire existence, and that section 10(f) instead requires this type of case to be brought first in a court of appeals.

## ARGUMENT

## I.   DISTRICT COURTS GENERALLY EXERCISE ORIGINAL JURISDICTION OVER APA CHALLENGES

Unless Congress directs otherwise, agency rulemakings are subject to challenge in federal district court.  Under 28 U.S.C. § 1331, district courts "shall have original jurisdiction of all civil actions" arising under federal law.  "Not *may* have jurisdiction, but *shall*.  Not *some* civil actions arising under federal law, but *all*."  *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 205 (2023) (Gorsuch, J., concurring); *see also Cochran v. SEC*, 20 F.4th 194, 199 (5th Cir. 2021).  That includes actions for "judicial review" under the APA, 5 U.S.C. § 702, which arise under federal law.  *E.g.*, *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 370 (5th Cir. 2023) (en banc).

Thus, the "normal default rule is that persons seeking review of agency action go first to district court rather than to a court of appeals."  *National Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012).  Because "courts of appeals are courts of limited jurisdiction," *Williams*

*v. Taylor Seidenbach, Inc.*, 958 F.3d 341, 345 (5th Cir. 2020) (en banc), initial review at the appellate level occurs "only when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action," *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (Kavanaugh, J.).

## II.   SECTION 10(F) OF THE NLRA DOES NOT DISPLACE THE DEFAULT RULE FOR RULEMAKING CHALLENGES

The Board argues that section 10(f) of the NLRA confers original jurisdiction on courts of appeals to review the Joint Employer Rule directly.  But text, structure, history, the Board's prior positions, and relevant precedent demonstrate otherwise.  And it is not a close call.

### A.   The Text Of Section 10(f) Limits Direct Appellate Review To Orders Resolving Unfair Labor Practice Cases

Section 10 of the NLRA, 29 U.S.C. § 160, titled "Prevention of Unfair Labor Practices" (reproduced in full in the Addendum), includes a direct review provision that states:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia by filing in such a court a written petition praying that the order of the Board be modified or set aside.  A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of Title 28.  Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

29 U.S.C. § 160(f).  This language, which then-Judge Jackson construed as "quite specific and relatively narrow," *AFL-CIO v. NLRB*, 466 F. Supp. 3d 68, 83 (D.D.C. 2020), plainly excludes review of Board rulemaking.

Start with the focus on "final order[s]."  Although the NLRA does not define "order," the APA does.  *See Watts*, 482 F.3d at 413 (looking to the APA's definition of "order" when "agency's direct-review statute did not define" the term).  It provides that an "order" is the "final disposition . . . of an agency in a matter *other than rule making*."  5 U.S.C. § 551(6) (emphasis added); *see also Sierra Club v. Peterson*, 185 F.3d 349, 366 (5th Cir. 1999).  Absent a contrary indication, then, section 10(f)'s reference to "final orders" should be construed to exclude "rulemakings."

Section 10(f), moreover, refers to a specific type of "final order"—namely, one that "grant[s] or den[ies]" some sort of "relief" that has been "sought."  29 U.S.C. § 160(f).  In other words, this language "clearly" refers to *adjudicative* orders resolving unfair labor practice cases.  *See Shell Chem. Co.*, 495 F.2d at 1120 ("[T]he order referred to [in subsection 10(f)] is clearly that resulting from . . . either the dismissal of an unfair labor practice complaint or the granting of relief relating to an unfair labor practice.").  Indeed, at the Board's urging, the Fifth Circuit has long understood the phrase "final order of the Board" to "*refer[] solely* to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found—in either case an order entered as *the culmination of the procedure described in Section 10(b) and (c) of the Act*."  *Id.* (emphasis added); *see Laundry Workers Int'l Union, Loc. 221 v. NLRB*, 197 F.2d 701, 703 (5th Cir. 1952) (adopting, as its own holding, a quotation from the Board's brief using the "refers solely" language).[1]

In contrast, agency *rules* (unlike orders) do not "grant" or "deny" "relief" sought by particular parties—and certainly not in the way those terms are commonly used.  "Relief" is usually

---

[1] The Board reiterated this point in court as recently as 2020.  *See* Br. in Supp. of Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 8, *Int'l Ass'n of Machinists & Aerospace Workers v. Ring*, No. 2:19-cv-3214-BHH (D.S.C. Jan. 31, 2020), ECF No. 25-1 ("Section 10(e) and (f) provides for review, in an appropriate court of appeals, *only* of a 'final order of the Board' entered in an unfair labor practice proceeding under Section 10.") (emphasis added).

"sought" (and then granted or denied) in an adjudicatory setting.  *See Relief*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "relief" as the "redress or benefit . . . that a party asks of a court"); *Prayer for Relief*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A request to the court and appearing at the end of a pleading; esp., a request for specific relief or damages."); *see also SEC v. McCarthy*, 322 F.3d 650, 657 (9th Cir. 2003) ("parties seek legal and/or equitable relief before a court of law through the filing of a formal complaint").  Although the Board feebly suggests (in passing) that "various Plaintiffs" "sought relief" via "comments" on the proposed rule, Mot. 13,[2] no one talks about "notice and comment" in terms of "seeking relief," *see AFL-CIO*, 466 F. Supp. 3d at 83 ("[T]here is no reasonable argument that credibly casts the 2019 Election Rule as an agency action that grants or denies any relief to a regulated party," which "alone is sufficient to cast doubt on the NLRB's contention that section 160(f) applies to the AFL-CIO's claims.").

Other features of section 10(f) reinforce that conclusion.  That subsection defines court of appeals jurisdiction by reference to "*the* unfair labor practice *in question* [that] was alleged to have *been engaged in*"—which assumes that a specific unfair labor practice is being adjudicated.  29 U.S.C. § 160(f) (emphases added).  That would of course be true in an unfair labor practice proceeding granting or denying relief—but not a general rulemaking.

Next, section 10(f) instructs a challenger to file in appellate court the record from "the proceeding."  29 U.S.C. § 160(f).  Yet the only "proceeding" section 10 contemplates is the "hearing" held to resolve charges of unfair labor practices.  *See* 29 U.S.C. § 160(b) ("In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the *said proceeding* and to present testimony.  Any such *proceeding* shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the

---

[2] Plaintiffs cite the blue ECF pagination in the top right corner of the Board's brief.

district courts of the United States under the rules of civil procedure for the district courts of the United States[.]") (emphases added); *id.* § 160(c) (if "evidence is presented before a member of the Board, or before an administrative law judge or judges thereof, such member, or such judge or judges as the case may be, shall issue and cause to be served on the parties *to the proceeding* a proposed report, together with a recommended order") (emphasis added); *see also Administrative Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("usually adjudicatory in nature").

Finally, section 10(f)'s last sentence instructs reviewing courts to treat as "conclusive" any "findings . . . of fact . . . supported by substantial evidence," 29 U.S.C. § 160(f)—a command that makes sense only in the context of reviewing agency adjudications.  The "substantial evidence standard applies only to agency findings of fact made after a hearing."  *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 27 (D.D.C. 2011).  It "does not apply in the rulemaking context," *id.*, which "ordinarily involves broad judgments" that are "legislative in nature rather than the resolution of a particular dispute of facts," *Natural Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1309 (9th Cir. 1992) (internal quotation marks omitted).

At bottom, Plaintiffs agree with the Board that "[t]he explicit text" of section 10(f) "should be followed."  Mot. 21.  But that text makes clear—and without any "ambiguities," Mot. 12—that section 10(f) limits direct review to orders in unfair labor practice proceedings, not Board rulemakings.

### B.    Section 10's Structure Confirms Subsection (f)'s Limited Reach

Section 10's structure compels the same reading.  Section 10 concerns unfair labor practice "cases brought by the NLRB's General Counsel."  Mot. 8.  And every subsection within it "exclusively" concerns such "proceedings."  *American Fed'n of Lab. v. NLRB*, 308 U.S. 401, 407 (1940):

13

- Subsection (a) authorizes the Board "to prevent any person from engaging in any unfair labor practice . . . affecting commerce," 29 U.S.C. § 160(a);

- Subsection (b) sets out the Board's procedures for "[w]henever it is charged that any person has engaged in or is engaging in any such unfair labor practice," *id.* § 160(b);

- Subsection (c) provides that if the Board finds by a "preponderance of the testimony taken" that "any person named in the complaint has engaged in . . . any such unfair labor practice, then the Board shall state its findings of fact and shall issue . . . an order requiring such person to cease and desist from such unfair labor practice," *id.* § 160(c);

- Subsection (d) then allows the Board to "modify or set aside, in whole or in part, any finding or order made or issued by it" so long as "the record" has not yet "been filed in a court," *id.* § 160(d); and

- Subsection (e) empowers the Board to "petition any court of appeals of the United States . . . for the enforcement of such order," *id.* § 160(e).

Read in its entirety, section 10 comprehensively governs NLRB adjudicatory proceedings brought to halt unfair labor practices—from initiation to judicial review or enforcement of final orders.  By its terms, it simply does not cover *rulemakings* of any sort.  Congress would not incongruously hide within it a provision that does.

A closer look at subsection (e)—which the Board itself characterizes as subsection (f)'s "corollary provision," Mot. 13—confirms that commonsense construction.  Both subsections concern appellate review of Board orders: subsection (e) allows the Board to seek *enforcement*, while subsection (f) allows an "aggrieved party" to seek *review*.  29 U.S.C. §§ 160(e)-(f).  Subsection (f) even cross-references subsection (e).  *Id.* § 160(f) ("[T]he court shall proceed in the same manner as in the case of an application by the Board under subsection (e).").  And the Board's regulations treat Board enforcement or party review as two sides of the same coin.  *See* 29 C.F.R. § 101.14 ("If the respondent does not comply with the Board's order, or the Board deems it desirable to implement the order with a court judgment, the Board may petition the appropriate Federal court for enforcement.  Or, the respondent or any person aggrieved by a final order of the

Board may petition the circuit court of appeals to review and set aside the Board's order.").  The

two provisions should thus be read in harmony.  And subsection (e) refers only to orders in unfair

labor practice cases.  *See* 29 U.S.C. §§ 160(c)-(e) (following earlier discussions of orders in unfair

labor practice cases and empowering the Board to petition for enforcement of "such order[s]");

*Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766 (2023) ("The word 'such' usually refers to

something that has already been 'described' or that is 'implied or intelligible from the context or

circumstances.'") (citation omitted).  Because it would make no sense for the Board to go to a

court of appeals to enforce a legislative "rule" (as opposed to an adjudicatory "order"), subsection

(e) is further proof that Congress contemplated judicial enforcement and review of adjudicatory

orders alone.

### C.     Consistent Historical And Modern Practice Reflect The Same Interpretation

If the overwhelming textual evidence were not enough, reading section 10(f) as limited to

orders in unfair labor practice cases also adheres to established practice and understanding.

Since the NLRA was enacted in 1935, the Board has issued countless orders in unfair labor

practice cases and published many rules.  Review of each has followed a well-worn path:

challenges to orders in unfair labor practice cases go first to courts of appeals, while challenges to

rules go first to district courts.  *Compare, e.g.*, *United Nat. Foods, Inc. v. NLRB*, 66 F.4th 536 (5th

Cir. 2023) (petition for review of order in unfair labor practice case); *Murphy Oil USA, Inc. v.

NLRB*, 808 F.3d 1013 (5th Cir. 2015), *aff'd sub nom. Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612

(2018) (same), *with, e.g.*, *National Ass'n of Mfrs. v. NLRB*, 846 F. Supp. 2d 34 (D.D.C. 2012),

*aff'd in part, rev'd in part*, 717 F.3d 947 (D.C. Cir. 2013) (district-court challenge to unfair labor

practices rule); *Chamber of Com. of U.S. v. NLRB*, 856 F. Supp. 2d 778 (D.S.C. 2012), *aff'd*, 721

F.3d 152 (4th Cir. 2013) (same); *ABC of Tex., Inc. v. NLRB*, No. 1-15-CV-26 RP, 2015 WL

3609116 (W.D. Tex. 2015), *aff'd*, 826 F.3d 215 (5th Cir. 2016) (district-court challenge to rule

amending election regulations); *Chamber of Com. of U.S. v. NLRB*, 118 F. Supp. 3d 171 (D.D.C. 2015) (same); *Chamber of Com. of U.S. v. NLRB*, 879 F. Supp. 2d 18 (D.D.C. 2012) (same); *Am. Hosp. Ass'n v. NLRB*, 718 F. Supp. 704 (N.D. Ill. 1989), *rev'd*, 899 F.2d 651 (7th Cir. 1990), *aff'd*, 499 U.S. 606 (1991) (district-court challenge to rule defining collective-bargaining units).

In fact, to Plaintiffs' knowledge, before the 2023 Joint Employer Rule, no plaintiff had *ever* challenged a Board rule first in a court of appeals.  The Board certainly cites no example.

As noted, courts have also historically read section 10(f) as limited to orders granting or denying relief in unfair labor practices proceedings.  For example, the Supreme Court said that the NLRA "on its face . . . indicates a purpose to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor [practices]."  *American Fed'n of Lab*, 308 U.S. at 409.  The Fifth Circuit repeatedly has confirmed—again, based on the NLRB's explicit representations—that subsection 10(f) "refers solely" to Board adjudications.  *United Nat. Foods*, 66 F.4th at 540 (citations omitted).  And other courts have echoed that conclusion.  *See, e.g.*, *International Ladies' Garment Workers Union, Local 415-475 v. NLRB*, 501 F.2d 823, 827-828 (D.C. Cir. 1974), *abrogated on other grounds by United Food*, 484 U.S. 112 ("The phrase a final order of the Board has consistently been held to refer to 'an order of the Board either dismissing a complaint in whole or in part or directing a remedy for unfair labor practices found—in either case an order entered as the culmination of the procedure described in Section 10(b) and (c) of the Act.'") (quoting *Laundry Workers*, 197 F.2d at 703); *Manhattan Constr. Co. v. NLRB*, 198 F.2d 320, 321 (10th Cir. 1952) (similar); *Inland Container Corp. v. NLRB*, 137 F.2d 642, 643 (6th Cir. 1943) (under section 10 an application may "be made to the circuit courts of appeals" for "review of" "an order involving an unfair labor practice").  To be sure, these cases largely involved questions about the finality of adjudicatory orders, not the proper forum for challenging Board rulemakings.  But courts'

unbroken understanding of section 10(f) as permitting review "solely" of Board adjudicatory orders—along with the absence of any direct-review challenges to NLRB rulemaking for the first 88 years of the Board's existence—strongly supports the plain-text understanding.

Finally, until 2020, the Board had *never* taken the position that section 10(f) applies to agency rulemakings.  *See* Board Reply at 26, *AFL-CIO v. NLRB*, Nos. 20-5223 & 20-5226 (D.C. Cir.) (admitting position on subsection 10(f) is "new").  *Cf. Chamber of Com. of U.S. v. Dep't of Labor*, 885 F.3d 360, 380-381 (5th Cir. 2018) (expressing "skepticism" of argument after "it took DOL forty years to 'discover' its novel interpretation").  As noted, the Board's regulations refer only to review or enforcement of adjudicatory orders, including any "findings" therein.  29 C.F.R. § 101.14 (court of appeals "reviews the record and the Board's findings and order").  To this day, the Board's website continues to describe orders eligible for direct appellate review as those issued "in a contested unfair labor practice case," Agency Court Filings, National Labor Relations Board,[3] and dubs "actions to review Board rulemaking" as "*not* statutorily based on Sections 10(e) and (f) of the Act," Contempt, Compliance, and Special Litigation Branch Briefs, National Labor Relations Board (emphasis added).[4]  Moreover, when the SEIU sought to challenge the Board's prior (2020) iteration of the Joint Employer Rule, it did so in district court—and yet  the NLRB has never tried to dismiss that challenge on jurisdictional grounds.  *See Service Employees Int'l Union (SEIU) v. NLRB et al.*, No. 21-cv-2443-RC (D.D.C.).  Instead, the SEIU and NLRB have repeatedly moved to maintain the case in abeyance—even after SEIU purported to challenge the 2023 Joint Employer Rule directly in the D.C. Circuit.

---

[3] *Available at* https://www.nlrb.gov/guidance/memos-research/agency-court-filings (last visited Dec. 4, 2023).

[4] *Available at* https://www.nlrb.gov/guidance/memos-research/agency-court-filings/contempt-compliance-and-special-litigation-branch (last visited Dec. 4, 2023).

### III.    THE BOARD'S CONTRARY ARGUMENTS ARE UNPERSUASIVE

The Board nevertheless maintains this Court lacks jurisdiction.  The Board is wrong.

### A.    The Scope Of Section 10(f) Is Unambiguou*s*

The Board's primary position is that purported "ambiguities" in the scope of section 10(f) lead to a presumption of direct appellate review.  Mot. 14.  But there are several fatal problems with that logic.

Most importantly, section 10(f) is not at all ambiguous in scope.  As shown above, the text and structure of section 10 make clear that subsection (f) limits direct review to orders from unfair labor practice adjudications; rules are not included.  The Board's reliance on cases discussing when the term "order" in an *ambiguous* direct-review statute "presumptively" includes "rules" is thus irrelevant.  Mot. 14-18.  The "presumption, however helpful, cannot overcome the commands of Congress."  *Loan Syndications & Trading Ass'n v. SEC*, 818 F.3d 716, 720 (D.C. Cir. 2016).

Regardless, there is no dispute that the Fifth Circuit has not adopted such a direct-review presumption.  *See* Mot. 17 ("the Fifth Circuit has not squarely faced the present issue of whether direct-review provisions referring to 'orders' encompass agency rules").  The Board tries to mask this fact by citing various Fifth Circuit cases the Board claims are in "accord[]."  *Id.*  But the cases are far afield from the statutory-construction question presented in this case.[5]

Even if a presumption might be appropriate elsewhere, the main reason for applying it is absent here.  In *Florida Power & Light Co. v Lorion*, 470 U.S. 729, 743 (1985), the Supreme Court

---

[5] For example, *Ligon v. LaHood*, 614 F.3d 150 (5th Cir. 2010), did not involve an APA challenge to a final rule—indeed, the parties did not dispute that the agency action was a final order under the relevant statutes.  *Atorie Air, Inc. v. FAA*, 942 F.2d 954 (5th Cir. 1991), did not involve a rulemaking challenge either.  And neither case concerned a statute like section 10.  *U.S. Steel Corp. v. EPA*, 595 F.2d 207 (5th Cir. 1979), and *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597 (5th Cir. 2016), are also different in a critical respect: they did not concern the word "order."

stressed that the direct-review presumption is meant to avoid "bifurcat[ed]" review.  But everyone agrees that a bifurcated system *already exists* under subsection 10(f):  even the Board accepts that the subject of a section 10(f) petition must be an NLRB action "concerning unfair labor practices." Mot. 18.  Thus, sending only "rules concerning unfair labor practices" (*id.*) to courts of appeals would create a *trifurcated* system, in which all adjudicatory orders go directly to courts of appeals, while rulemaking is reviewed in different forums depending on the subject matter.  No court should read the NLRA to "create[e] such a seemingly irrational . . . system."  *Lorion*, 470 U.S. at 742.

To the extent that "requiring petitioners challenging regulations to go first to the district court results in unnecessary delay and expense," *Investment Co. Inst. v. Board of Governors of Fed. Rsrv. Sys.*, 551 F.2d 1270, 1276 (D.C. Cir. 1977); Mot. 20-21, that is true for all APA cases. Yet starting in district court is still the "default rule."  *National Auto. Dealers*, 670 F.3d at 270. And though SEIU's decision to file its latest challenge (unlike its prior one) in the D.C. Circuit means there are now two pending challenges to the new Joint Employer Rule, Mot. 20, Plaintiffs have already moved to intervene in that action and will shortly move to dismiss SEIU's petition for the same reasons explained here.  Mot. to Intervene of Employer Groups, Doc. # 2029874, *SEIU v. NLRB*, No. 23-1309 (D.C. Cir. Dec. 4, 2023).[6]

### B.    The Statute's Text, Not The D.C. Circuit's Musings, Controls

The Board leans heavily on statements from a recent D.C. Circuit opinion suggesting that section 10(f) might encompass not only Board orders, but also Board rules "concerning unfair labor practices."  Mot. 18-21; *AFL-CIO v. NLRB*, 57 F.4th 1023, 1031-1032 (D.C. Cir. 2023).  But

---

[6] Accordingly, if this Court somehow agrees with the Board's construction of section 10(f) and finds that it lacks jurisdiction, there is no need to transfer the case to the D.C. Circuit.  Plaintiffs would instead ask that the Court simply dismiss the suit for lack of subject-matter jurisdiction to allow an immediate appeal to the Fifth Circuit.

the D.C. Circuit never resolved that question.  The court held that "the district court *correctly* exercised jurisdiction over the AFL-CIO's challenge to the 2019 Rule" because section 10(f) does *not* permit direct review of rules concerning representation elections.  *AFL-CIO*, 57 F.4th at 1032-1033 (emphasis added).  Given that holding, the D.C. Circuit had no need to decide whether section 10(f) applies to rules "concerning unfair labor practices" because, "*even accepting that 'final order' also extends to rules*," it did not apply to the Rule at issue.  *Id.* at 1033 (emphasis added); *see also AFL-CIO*, 466 F. Supp. 3d at 87 n.9 ("[W]hether section [10(f)]'s reference to 'orders' in the context of unfair labor practice disputes should be interpreted to include 'rules' that pertain to unfair labor practices . . . is not before this Court.").

Even assuming section 10(f) covers rules "concerning unfair labor practices," the new Joint Employer Rule does not qualify.  As the Board admits, the Joint Employer Rule "applies in both the representation-case and unfair-labor-practice-case contexts."  Mot. 10.  The Rule defines a term that is relevant throughout the NLRA and that "applies 'for all purposes under the Act.'" Mot. 19 (quoting 88 Fed. Reg. at 73,982, 74,017).  A rule "concerning" unfair labor practices must be more targeted toward unfair labor practices specifically.  Otherwise, there may as well be no distinction between rules at all—casting further doubt on any novel and unworkable line between "unfair labor practice" and "representation" rules.

The Board counters that the Joint Employer Rule qualifies because it "alters the substantive law of bargaining obligations and derivative liability, thus affecting the adjudication of unfair labor practices."  Mot. 19.  But that can't be what it means to "concern" unfair labor practices.  What Board rules do not "alter the substantive law of bargaining obligations and derivative liability"? The "representation rule" at issue in the D.C. Circuit certainly could.  In fact, that rule explicitly contemplated the effect it would have on unfair labor practice charges.  *See, e.g.*,

Representation-Case Procedures, 84 Fed. Reg. 69,524, 69,525 (Dec. 18, 2019) ("the final rule will give better guidance to the employees and parties and will help avoid conduct that may give rise to objections or unfair labor practices"); *see also id.* at 69,525–69,599 (mentioning "unfair labor practice" 24 times). Yet the D.C. Circuit said (and the Board now appears to agree begrudgingly) that section 10(f) did not apply to that rule. *AFL-CIO*, 57 F.4th at 1033. Accepting the Board's definition would "permit the [Board] to bootstrap virtually every . . . regulation into the . . . review procedure reserved by Congress for [unfair labor practice disputes] alone." *Louisiana Chem. Ass'n v. Bingham*, 657 F.2d 777, 784 (5th Cir. 1981).

In any event, for the reasons explained above, interpreting section 10(f) to encompass any Board rules—including rules "concerning unfair labor practices"—is indefensible. And this Court should not follow any obviously wrong out-of-circuit musings to the contrary.

## CONCLUSION

The Court should deny the Board's motion to transfer and consider the merits of Plaintiffs' rule challenge.

Dated:  December 4, 2023

Respectfully submitted,

/s/ *Pratik A. Shah*

Stephanie A. Maloney
  D.C. Bar No. 1044276 (*pro hac vice*)
Jordan L. Von Bokern
  D.C. Bar No. 1032962 (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062-2000
Telephone:  (202) 463-5337
smaloney@uschamber.com
jvonbokern@uschamber.com

*Attorneys for the Chamber of Commerce of the United States of America*

Maury Baskin
  D.C. Bar No. 248898 (*pro hac vice*)
Littler Mendelson
815 Connecticut Avenue, N.W.
Suite 400
Washington, D.C. 20006
Telephone:  (202) 842-3400
Facsimile:  (202) 842-0011
mbaskin@littler.com

*Counsel to Associated Builders and Contractors and International Franchise Association*

Angelo I. Amador
  D.C. Bar No. 480031 (*pro hac vice*)
Restaurant Law Center
2055 L Street, N.W.
Suite 700
Washington, D.C. 20036
Telephone:  (202) 331-5913

*Counsel for the Restaurant Law Center*

Pratik A. Shah (Lead Attorney)
  D.C. Bar No. 497108 (*pro hac vice*)
James E. Tysse
  D.C. Bar No. 9787522 (*pro hac vice*)
James C. Crowley
  D.C. Bar No. 208946 (*pro hac vice*)
Margaret O. Rusconi
  D.C. Bar No. 1719371 (*pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288
pshah@akingump.com
jtysse@akingump.com
jcrowley@akingump.com
mrusconi@akingump.com

Laura P. Warrick
  Texas Bar No. 24079546
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone:  (214) 969-4770
Facsimile:  (214) 969-4343
lwarrick@akingump.com

*Counsel to Plaintiffs Chamber of Commerce of the United States of America; American Hotel and Lodging Association; Associated Builders and Contractors; Associated General Contractors of America; Coalition for a Democratic Workplace; International Franchise Association; Longview Chamber of Commerce; National Association of Convenience Stores; National Retail Federation; Restaurant Law Center; Texas Association of Business; and Texas Restaurant Association*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 4, 2023, the above document was electronically submitted with the clerk of the court for the United States District Court, Eastern District of Texas, using the electronic case file system of the court.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


 */s/ Pratik A. Shah*
Pratik A. Shah

**ADDENDUM**

**TABLE OF CONTENTS**

29 U.S.C. § 156............................................................................................Add. 1

29 U.S.C. § 157............................................................................................Add. 1

29 U.S.C. § 158............................................................................................Add. 1

29 U.S.C. § 159............................................................................................Add. 7

29 U.S.C. § 160............................................................................................Add. 9

29 C.F.R. § 101.14 ......................................................................................Add. 14

**United States Code**

**Title 29. Labor**

**Chapter 7. Labor-Management Relations**

**Subchapter II. National Labor Relations**

**29 U.S.C. § 156**

**§ 156. Rules and regulations**

The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by subchapter II of chapter 5 of Title 5, such rules and regulations as may be necessary to carry out the provisions of this subchapter.

**29 U.S.C. § 157**

**§ 157. Right of employees as to organization, collective bargaining, etc.**

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

**29 U.S.C. § 158**

**§ 158. Unfair labor practices**

**(a) Unfair labor practices by employer**

It shall be an unfair labor practice for an employer--

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided*, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

Add. 1

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

## (b) Unfair labor practices by labor organization

It shall be an unfair labor practice for a labor organization or its agents--

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the

course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--

(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e);

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

*Provided*, That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter: *Provided further*, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

(5) to require of employees covered by an agreement authorized under subsection (a)(3) the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory under all the circumstances. In making such a finding, the Board shall consider, among other relevant factors, the practices

and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;

(6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title,

(B) where within the preceding twelve months a valid election under section 159(c) of this title has been conducted, or

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further*, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection.

**(c) Expression of views without threat of reprisal or force or promise of benefit**

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

**(d) Obligation to bargain collectively**

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times

and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided*, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification--

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

The duties imposed upon employers, employees, and labor organizations by paragraphs (2) to (4) of this subsection shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 159(a) of this title, and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract. Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer. Whenever the collective bargaining involves employees of a health care institution, the provisions of this subsection shall be modified as follows:

(A) The notice of paragraph (1) of this subsection shall be ninety days; the notice of paragraph (3) of this subsection shall be sixty days; and the contract period of paragraph (4) of this subsection shall be ninety days.

(B) Where the bargaining is for an initial agreement following certification or recognition, at least thirty days' notice of the existence of a dispute shall be given by the labor organization to the agencies set forth in paragraph (3) of this subsection.

(C) After notice is given to the Federal Mediation and Conciliation Service under either clause (A) or (B) of this sentence, the Service shall promptly communicate with the parties and use its best efforts, by mediation and conciliation, to bring them to agreement. The parties shall participate fully and promptly in such meetings as may be undertaken by the Service for the purpose of aiding in a settlement of the dispute.

**(e) Enforceability of contract or agreement to boycott any other employer; exception**

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: *Provided further*, That for the purposes of this subsection and subsection (b)(4)(B) the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further*, That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.

**(f) Agreement covering employees in the building and construction industry**

It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: *Provided*, That

Add. 6

nothing in this subsection shall set aside the final proviso to subsection (a)(3): *Provided further*, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

**(g) Notification of intention to strike or picket at any health care institution**

A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of subsection (d). The notice shall state the date and time that such action will commence. The notice, once given, may be extended by the written agreement of both parties.

## 29 U.S.C. § 159

### § 159. Representatives and elections

**(a) Exclusive representatives; employees' adjustment of grievances directly with employer**

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment.

**(b) Determination of bargaining unit by Board**

The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation or (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization

Add. 7

admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.

**(c) Hearings on questions affecting commerce; rules and regulations**

(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board--

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a), or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a); or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a);

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

(2) In determining whether or not a question of representation affecting commerce exists, the same regulations and rules of decision shall apply irrespective of the identity of the persons filing the petition or the kind of relief sought and in no case shall the Board deny a labor organization a place on the ballot by reason of an order with respect to such labor organization or its predecessor not issued in conformity with section 160(c) of this title.

(3) No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this subchapter in any election conducted within twelve months after the commencement of the strike. In any election where none of the choices on the ballot receives a majority, a run-off shall be conducted, the ballot providing for a selection between the two choices receiving the largest and second largest number of valid votes cast in the election.

(4) Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board.

(5) In determining whether a unit is appropriate for the purposes specified in subsection (b) the extent to which the employees have organized shall not be controlling.

Add. 8

**(d) Petition for enforcement or review; transcript**

Whenever an order of the Board made pursuant to section 160(c) of this title is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) of section 160 of this title, and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript.

**(e) Secret ballot; limitation of elections**

(1) Upon the filing with the Board, by 30 per centum or more of the employees in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to section 158(a)(3) of this title, of a petition alleging they desire that such authority be rescinded, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(2) No election shall be conducted pursuant to this subsection in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held.


### 29 U.S.C. § 160

**§ 160. Prevention of unfair labor practices**

**(a) Powers of Board generally**

The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.

**(b) Complaint and notice of hearing; answer; court rules of evidence inapplicable**

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of

said complaint: Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28.

### (c) Reduction of testimony to writing; findings and orders of Board

The testimony taken by such member, agent, or agency or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him: And provided further, That in determining whether a complaint shall issue alleging a violation of subsection (a)(1) or (a)(2) of section 158 of this title, and in deciding such cases, the same regulations and rules of decision shall apply irrespective of whether or not the labor organization affected is affiliated with a labor organization national or international in scope. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause. In case the evidence is presented before a member of the Board, or before an administrative law judge or judges thereof, such member, or such judge or judges as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed.

Add. 10

**(d) Modification of findings or orders prior to filing record in court**

Until the record in a case shall have been filed in a court, as hereinafter provided, the Board may at any time upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it.

**(e) Petition to court for enforcement of order; proceedings; review of judgment**

The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of Title 28.

**(f) Review of final order of Board on petition to court**

Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of Title 28. Upon

Add. 11

the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

**(g) Institution of court proceedings as stay of Board's order**

The commencement of proceedings under subsection (e) or (f) of this section shall not, unless specifically ordered by the court, operate as a stay of the Board's order.

**(h) Jurisdiction of courts unaffected by limitations prescribed in chapter 6 of this title**

When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by chapter 6 of this title.

**(i) Repealed. Pub.L. 98-620, Title IV, § 402(31), Nov. 8, 1984, 98 Stat. 3360**

**(j) Injunctions**

The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

**(k) Hearings on jurisdictional strikes**

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

**(l) Boycotts and strikes to force recognition of uncertified labor organizations; injunctions; notice; service of process**

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this

Add. 12

title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: Provided further, That no temporary restraining order shall be issued without notice unless a petition alleges that substantial and irreparable injury to the charging party will be unavoidable and such temporary restraining order shall be effective for no longer than five days and will become void at the expiration of such period: Provided further, That such officer or regional attorney shall not apply for any restraining order under section 158(b)(7) of this title if a charge against the employer under section 158(a)(2) of this title has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue. Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: Provided further, That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of legal process upon such officer or agent shall constitute service upon the labor organization and make such organization a party to the suit. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b)(4)(D) of this title.

**(m) Priority of cases**

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of subsection (a)(3) or (b)(2) of section 158 of this title, such charge shall be given priority over all other cases except cases of like character in the office where it is filed or to which it is referred and cases given priority under subsection (l).

**Code of Federal Regulations**

**Title 29. Labor**

**Subtitle B. Regulations Relating to Labor**

**Chapter I. National Labor Relations Board**

**Part 101. Statements of Procedures**

**Subpart B. Unfair Labor Practice Cases Under Section 10(a) to (i) of the Act and Telegraph Merger Act Cases**

**29 C.F.R. § 101.14**

**§ 101.14 Judicial review of Board decision and order.**

If the respondent does not comply with the Board's order, or the Board deems it desirable to implement the order with a court judgment, the Board may petition the appropriate Federal court for enforcement. Or, the respondent or any person aggrieved by a final order of the Board may petition the circuit court of appeals to review and set aside the Board's order. If a petition for review is filed, the respondent or aggrieved person must ensure that the Board receives, by service upon its Deputy Associate General Counsel of the Appellate Court Branch, a court-stamped copy of the petition with the date of filing. Upon such review or enforcement proceedings, the court reviews the record and the Board's findings and order and sustains them if they are in accordance with the requirements of law. The court may enforce, modify, or set aside in whole or in part the Board's findings and order, or it may remand the case to the Board for further proceedings as directed by the court. Following the court's judgment, either the Government or the private party may petition the Supreme Court for review upon writ of certiorari. Such applications for review to the Supreme Court are handled by the Board through the Solicitor General of the United States.