**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD, *et al.*,<br><br>Defendants. | ) ) ) ) ) ) ) Civil Case No. 6:23-cv-00553-JCB ) ) ) ) ) ) ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER
TO THE D.C. CIRCUIT FOR LACK OF SUBJECT-MATTER JURISDICTION**

**Table of Contents**

I.   Because Section 10(f) facially grants direct circuit-court review jurisdiction over all final orders of the Board, jurisdiction does not default to the district court. ..............................................................7

II.   Because Congress sought to channel review of NLRA decision-making to the circuit courts, ambiguity means Section 10(f) must be construed broadly. ......................................................................8

III.   The interest of justice favors transfer, not dismissal. ......................................................................16

**Table of Authorities**

Cases

*Abbott Laboratories v. Gardner,*
  387 U.S. 136 (1967) ...................................................................................................11

*AFL-CIO v. NLRB,*
  57 F.4th 1023 (D.C. Cir. 2023) .....................................................................9, 15, 16

*AFL v. NLRB,*
  308 U.S. 401 (1940) ......................................................................................11, 12, 13

*AFL-CIO v. NLRB,*
  466 F. Supp. 3d 68 (D.D.C. 2020) ................................................................................9

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
  745 F.2d 677 (D.C. Cir. 1984) ....................................................................................10

*Atorie Air, Inc. v. FAA,*
  942 F.2d 954 (5th Cir. 1991) .........................................................................................8

*Bennett v. Spear,*
  520 U.S. 154 (1997) .......................................................................................................8

*Bokat v. Tidewater Equip. Co.,*
  363 F.2d 667 (5th Cir. 1966) ..........................................................................7, 12, 15

*Browning-Ferris Industries of California, Inc.,*
  362 NLRB 1599 (2015) .................................................................................................7

*Califano v. Sanders,*
  430 U.S. 99 (1977) .........................................................................................................9

*Cohens v. Virginia,*
  19 U.S. (6 Wheat.) 264 (1821) ....................................................................................13

*FEC v. NRA Pol. Victory Fund,*
  513 U.S. 88 (1994) .......................................................................................................14

*Fla. Power & Light Co. v. Lorion,*
  470 U.S. 729 (1985) .....................................................................................................16

*Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776 (A.F.L.),*
  346 U.S. 485 (1953) .....................................................................................................12

*Inland Container Corp. v. NLRB,*
  137 F.2d 642 (6th Cir. 1943) .......................................................................................13

*Int'l Ladies' Garment Workers Union, Loc. 415-475 v. NLRB*,
   501 F.2d 823 (D.C. Cir. 1974) ..............................................................................13

*Laundry Workers Int'l Union, Loc. 221 v. NLRB*,
   197 F.2d 701 (5th Cir. 1952) ................................................................................13

*Lewis v. Casey*,
   518 U.S. 343 (1996) .............................................................................................14

*Manhattan Const. Co. v. NLRB*,
   198 F.2d 320 (10th Cir. 1952)..............................................................................13

*Myers v. Bethlehem Shipbuilding Corp.*,
   303 U.S. 41 (1938) ...............................................................................................12

*N.Y. Republican State Comm'n v. SEC*,
   799 F.3d 1126 (D.C. Cir. 2015) .............................................................................8

*Nat'l Auto. Dealers Ass'n v. FTC*,
   670 F.3d 268 (D.C. Cir. 2012) ...............................................................................7

*Nat'l Fed'n of Blind v. DOT*,
   827 F.3d 51 (D.C. Cir. 2016) .................................................................................9

*New Process Steel, L.P. v. NLRB*,
   560 U.S. 674 (2010) .............................................................................................15

*NLRB v. Bell Aerospace Co.*,
   416 U.S. 267 (1974) .............................................................................................15

*NLRB v. Browning-Ferris Industries of Pa., Inc.*,
   691 F.2d 1117 (3d Cir. 1982) ..............................................................................15

*NLRB v. Wilder Mfg. Co.*,
   454 F.2d 995 (D.C. Cir. 1972) ...............................................................................9

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
   139 S. Ct. 2051 (2019)..........................................................................................11

*Sebelius v. Auburn Reg'l Med. Ctr.*,
   568 U.S. 145 (2013) .............................................................................................14

*Select Specialty Hosp. Akron, LLC v. Sebelius*
   820 F. Supp. 13 (D.D.C. 2011).............................................................................10

*Shell Chem. Co. v. NLRB*,
   495 F.2d 1116 (5th Cir. 1974)..............................................................................13

*Steel Co. v. Citizens for a Better Envt.*,
   523 U.S. 83 (1998) .................................................................................................................14

*U.S. Steel Corp. v. EPA*,
   595 F.2d 207 (5th Cir. 1979) .................................................................................................8

*United Nat. Foods, Inc. v. NLRB*,
   66 F.4th 536 (5th Cir. 2023) .................................................................................................13

*United States v. More*,
   7 U.S. (3 Cranch) 159 (1805) ...............................................................................................14

*Wachovia Bank v. Schmidt*,
   546 U.S. 303 (2006) ...............................................................................................................9

Statutes

5 U.S.C. § 706(2)(E) ......................................................................................................................10

28 U.S.C. § 1631 ............................................................................................................................16

28 U.S.C. § 2112 ............................................................................................................................16

29 U.S.C. § 160(e) ..........................................................................................................................12

29 U.S.C. § 160(f) .....................................................................................................................passim

29 U.S.C. § 160(j) ...........................................................................................................................12

29 U.S.C. § 161(2) ..........................................................................................................................12

Federal Register

*Joint Employer Status Under the National Labor Relations Act*,
   85 Fed. Reg. 11,184 (Feb. 26, 2020) ....................................................................................13

*Standard for Determining Joint Employer Status*,
   88 Fed. Reg. 73,946 ..............................................................................................................13

Other Authorities

S. REP. NO. 74-573, *reprinted at* 2 *Legislative History of the National Labor Relations Act* (1949) .................12

Stephen G. Breyer & Richard B. Stewart,
    Administrative Law and Regulatory Policy (3d ed. 1992) ....................................................11

*Relief*, BLACK'S LAW DICTIONARY (11th ed. 2019) .......................................................8

*Relief*, NEW WEBSTERIAN 1912 DICTIONARY ILLUSTRATED 690 (1912)...................................8

*Relief*, OXFORD ENGLISH DICTIONARY (3d ed. 2009) .............................................9

*The Shaping of the American Labor Movement*,
    102 Harv. L. Rev. 1109 (1989).............................................................................12

In enacting the National Labor Relations Act (NLRA or Act), Congress took great care to remove district courts from the practice of issuing sweeping pronouncements governing national labor policy. And the Fifth Circuit has made expressly clear that district courts "have a very very minor role to play" under the Act, sharply cautioning against "over-the-shoulder supervision" of the National Labor Relations Board (NLRB or Board).[1] This Court should resist any such temptation, especially given that review of the instant rule would intrude into core Board policymaking.

## I.   Because Section 10(f) facially grants direct circuit-court review jurisdiction over all final orders of the Board, jurisdiction does not default to the district court.

As Plaintiffs' own authority provides, the default rule that district courts generally have original jurisdiction over cases raising federal questions does not apply where a statute channels review of agency action directly to the circuit courts.[2] Where the scope of the channeling provision is ambiguous as to a particular agency action, the provision is read to encompass review of that action, unless there is a "firm indication" that Congress intended to split judicial review between different levels of the court system.[3] Here, Section 10(f)[4] unmistakably channels to the circuit courts all final Board orders issued through adjudication of unfair-labor-practice cases. This would include orders revising federal labor policy on joint employment, as in *Browning-Ferris Industries of California, Inc. (BFI)*.[5] Nothing in Section 10(f) is expressly limited to adjudications, however, nor does it exclude rulemakings. Absent compelling evidence of contrary legislative intent, that provision is best read to encompass adjudicatory orders *and* final rules, at least those relating to unfair labor practices.

---

[1] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966).

[2] Pls.' Opp. to Defs.' Mot. To Transfer (Opp.), ECF No. 29, at 9 (quoting *Nat'l Auto. Dealers Ass'n v. FTC (NADA)*, 670 F.3d 268, 270 (D.C. Cir. 2012)); *see also NADA,* 670 F.3d at 270 (citing *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)).

[3] *NADA*, 670 F.3d at 270 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 745 (1985)).

[4] 29 U.S.C. § 160(f).

[5] 362 NLRB 1599 (2015), *aff'd in part, rev'd in part and remanded*, 911 F.3d 1195 (D.C. Cir. 2018).

## II. Because Congress sought to channel review of NLRA decision-making to the circuit courts, ambiguity means Section 10(f) must be construed broadly.

Plaintiffs assert that Section 10(f) unambiguously covers only "*adjudicative* orders resolving unfair labor practice cases," not Board rulemakings.[6] But that assertion grants undue weight to the Act's venue provision and reaches illogical conclusions about congressional intent.

*Statutory text:* Starting with the language of Section 10(f), the jurisdictional trigger is "a final order of the Board" that grants or denies some form of "relief." The Rule fits that bill. Is it final? Yes, it is the culmination of the Board's decision-making process and legal consequences flow from it.[7] Is it an order? Yes, for purposes of direct-review statutes, courts consistently hold that rulemakings are a type of "order" subject to circuit-court review, and Fifth Circuit precedent similarly takes an expansive view of "order" in direct-review statutes.[8] Does it grant or deny relief? Yes, the Rule both granted and denied "relief sought" by various members of the public in their comments during the rulemaking, including comments of several Plaintiffs, by altering whether an entity may be considered the joint employer of another employer's employees.[9]

---

[6] Opp., at 11.

[7] *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

[8] *See* Defs.' Mot. To Transfer, ECF No. 25, at 8-12; *see also N.Y. Republican State Comm'n v. SEC*, 799 F.3d 1126, 1129-30 (D.C. Cir. 2015) (*NYSRC*); *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991) (affording "expansive construction" of the term "order" under the Federal Aviation Act); *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 212 (5th Cir. 1979) (challenge to Environmental Protection Agency regulation should proceed in circuit court based on a substantial record and general effect); *JTB Tools & Oilfield Servs., LLC v. United States,* 831 F.3d 597, 600 (5th Cir. 2016) (provisions of the OSH Act vesting direct circuit court review of agency actions "necessarily" granted "exclusive jurisdiction to review *inaction* as well."). Plaintiffs say next to nothing about these cases specifically addressing the scope of statutory direct-review provisions, opting instead to highlight essentially irrelevant precedent dealing mainly with finality, discussed below at p. 12-13.

[9] Plaintiffs quote fragments of sources defining "relief" in an effort to artificially narrow its meaning to an adjudicatory setting. Opp., at 11-12. A full look at *Relief*, BLACK'S LAW DICTIONARY (11th ed. 2019) proves that "relief" is a term of surpassing breadth that is used and understood expansively in law. This comports with the broad definition found elsewhere. *E.g., Relief*, NEW WEBSTERIAN 1912 DICTIONARY ILLUSTRATED 690 (1912) (*inter alia*, "release from some post of duty" or "redress");

While Plaintiffs reference the Administrative Procedure Act's definition of "order" (enacted in 1946) to limit the scope of "order" in NLRA Section 10(f) (originally enacted in 1935), courts do not read those terms as parallel.[10] Which makes sense, because the APA is not a jurisdictional grant,[11] and therefore can provide no guidance as to which court is to perform rulemaking review. Plaintiffs' quick resort to the APA definition only underscores the ambiguity in Section 10(f).

Next, Plaintiffs conflate Section 10(f)'s provisions concerning subject-matter jurisdiction with those addressing venue.[12] Section 10(f) contains a venue provision immediately following its jurisdictional grant, which allows venue not just where the aggrieved person resides or transacts business or in D.C., but also in "any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in."[13] This pertains to venue, not jurisdiction. "Judicial decisions have made clear that all intermediate federal courts have jurisdiction to review and enforce orders of the NLRB and that 29 U.S.C. §§ 160(e), (f), in designating particular forums for given cases, are concerned only with venue."[14] This provision does not require there to have been an "unfair labor practice in question" to have effect. It *implies* that there has been an

---

*Relief*, OXFORD ENGLISH DICTIONARY (3d ed. 2009) (*inter alia* "formal release, esp. in law, from some hardship, burden, or grievance" or "legal remedy or redress"). Nothing in these definitions casts doubt on the view that commenters responding to the Board's proposed rule sought, and the Board in issuing the Final Rule provided, "relief." Plaintiffs are correct that the district court in *AFL-CIO v. NLRB*, 466 F.Supp.3d 68, 83 (D.D.C. 2020), tentatively speculated whether the particular rulemaking there implicated "relief sought." Opp., at 12. But they neglect to mention that on review, the D.C. Circuit effectively nullified the lower court's passing statements and stated definitively that Section 10(f) covers "NLRB final orders (and, per binding precedent, rules) concerning unfair labor practices." 57 F.4th 1023, 1032 (D.C. Cir. 2023).

[10] *See Nat'l Fed'n of the Blind v. DOT*, 827 F.3d 51, 55 (D.C. Cir. 2016); *NYRSC*, 799 F.3d at 1132.

[11] *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

[12] Opp., at 12.

[13] 29 U.S.C. § 160(f).

[14] *NLRB v. Wilder Mfg. Co.*, 454 F.2d 995, 998 n.12 (D.C. Cir. 1972). Crucially, "venue and subject-matter jurisdiction are not concepts of the same order. Venue is largely a matter of litigational convenience[.]" *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006).

"unfair labor practice in question," but that is the very definition of ambiguity—a statutory phrase that can, but need not, be read in a particular way.[15] The venue provision *creates* ambiguity, it does not *resolve* it in favor of district court review.

Next, Plaintiffs argue that the word "proceeding" must refer only to a single unfair-labor-practice case throughout Section 10.[16] But Sections 10(b) and (c) use that word only as a self-contained reference to the proceedings discussed in those paragraphs; there is nothing to suggest that Congress intended it to convey critical textual clues as to the breadth of Section 10(f). Likewise, the phrase "substantial evidence" cannot bear the weight Plaintiffs ascribe;[17] that phrase is routinely used to describe the standard for judicial review of rulemaking.[18] The lone district court opinion Plaintiffs cite to the contrary, *Select Specialty Hosp. Akron, LLC v. Sebelius*,[19] holds only that the *APA's own* "substantial evidence" review provision, 5 U.S.C. § 706(2)(E), applies to adjudications only; this is irrelevant since other agency-specific review statutes *do* use that term to describe the standard for judicial review of rulemaking.[20]

---

[15] The fact that there has been no specific "unfair labor practice in question" in the instant rulemaking does not make Section 10(f)'s jurisdictional language dysfunctional or inoperable. In any case challenging a final Board action, parties would always have access to at least one, and usually numerous, forums for review. That Congress supplied petitioners with an additional convenient forum reflects its desire to give them a broad liberty of venue, but says nothing about its views on the proper distribution of judicial review between district and circuit courts.

[16] Opp., at 12-13.

[17] Opp., at 13.

[18] *E.g. Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 685 (D.C. Cir. 1984) (Scalia, J.). Indeed, there is no practical difference between review for substantial evidence and review for arbitrariness, nor could there be without creating baffling discrepancies in circumstances where both rulemaking and adjudication are at issue. *Id.* at 684.

[19] 820 F. Supp. 2d 13, 27 (D.D.C. 2011).

[20] *Ass'n of Data Processing Serv. Orgs.*, 745 F.2d at 685 (collecting examples).

As for Plaintiffs' structural argument that Section 10(f) is within a section dealing with unfair labor practices,[21] as noted above, it is clear why Congress put the NLRA's direct-review language in Section 10, and the reason has nothing to do with rulemaking. Congress's overriding concern was to prohibit direct judicial review of representation cases.[22] "The conclusion is unavoidable," the Supreme Court held, "that Congress, as the result of a deliberate choice of conflicting policies, has excluded representation certifications of the Board from the review by federal appellate courts authorized by the Wagner Act except in the circumstances specified in § 9(d)."[23] So Congress separated judicial review of unfair labor practices provided in Section 10 from the NLRA's provisions relating to representation certifications in Section 9.

This history is all well known, but tells us nothing about judicial review of *rulemaking*, a third, distinct statutory function of the Board that was not before the high Court in *AFL*. When Congress last amended Section 6, the NLRA's rulemaking provision, in 1947, pre-enforcement challenges to rules were rare and widely assumed to be unripe. This did not change until the Supreme Court issued its landmark decision in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). Thus, it is likely that the 1947 Congress simply assumed judicial review of Board rules could occur only in the post-enforcement context—that is, when a person aggrieved by a rule in an unfair-labor-practice case challenged that rule in a court of appeals under Section 10(f).[24]

---

[21] Opp., at 13-14.

[22] *AFL v. NLRB*, 308 U.S. 401, 410-11 (1940).

[23] *Id.* at 411.

[24] *See* Stephen G. Breyer & Richard B. Stewart, Administrative Law and Regulatory Policy 1110-11 (3d ed. 1992); *accord PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (four-Justice concurrence in the judgment) ("To be sure, this Court's decision in *Abbott Laboratories v. Gardner* revolutionized administrative law by *also* allowing facial, pre-enforcement challenges to agency orders, absent statutory preclusion of such pre-enforcement review.") (citation omitted).

What is unmistakably clear is that Congress intended district courts to "have a very very minor role to play" under the NLRA.[25] Congress determined that the courts of appeals would have exclusive jurisdiction to review final Board action[26] and granted district courts jurisdiction in just two specific, narrow respects (enforcement of subpoenas and *pendente lite* injunctions), both of which may only be invoked by the Board itself.[27] Thus, Congress made no "deliberate choice of conflicting policies" when it came to subject-matter jurisdiction of rulemaking suits.[28]

Finally, looking at Section 10(e) does not move the needle.[29] This section grants *the Board* "power to petition any court of appeals . . . within any circuit . . . wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, *for the enforcement of such order . . . .*"[30] A phrase like "such order" is a grammatical shorthand, whose meaning depends on the order being referenced, but here, has no definition within the section. By contrast, Section 10(f) is self-contained. So while Section 10(e) is drafted to be understood in reference to the preceding subsections of Section 10, it does not *unambiguously* demonstrate a "firm indication" that Section 10(f) is exclusive to adjudications.

<u>**Caselaw:**</u> To support their crabbed reading of Section 10(f), Plaintiffs rely on a series inapposite cases, which they concede deal "largely" with the irrelevant topic of order finality, as

---

[25] *Bokat*, 363 F.2d at 673.

[26] 29 U.S.C. §§ 160(e), 160(f); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938) ("The grant of that exclusive power is constitutional"); *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776 (A.F.L.)*, 346 U.S. 485, 490 (1953) ("Congress did not merely lay down a substantive rule of law to be enforced by any tribunal…. [It] evidently considered that centralized administration [was necessary to avoid the] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies).

[27] *See* 29 U.S.C. §§ 160(j), 161(2); *accord Bokat*, 363 F.2d at 673.

[28] *AFL*, 308 U.S. at 411.

[29] Opp. at 14-15.

[30] 29 U.S.C. § 160(e).

opposed to the salient issue here of "the proper forum for challenging Board rulemakings."[31] Many of Plaintiffs' cases turn upon distinguishing between Board orders issued in unfair-labor-practice cases and representation proceedings.[32] Others concern whether various other Board actions, unrelated to rulemaking and of no import here, were final orders.[33] Unlike representation certifications or the non-final Board orders addressed in Plaintiffs' cases, rulemakings are indisputably final. These cases offer no resolution of the question at hand.

True, the Fifth Circuit has stated that Section 10(f) "refers solely to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found."[34] But nothing indicates that the court contemplated rulemaking either when it first used this "refers solely" language in 1952, long before the rise of pre-enforcement challenges, or afterwards. So it should not be expanded to bear any precedential weight, let alone be construed as dispositive, as to the wholly unique question here of whether district courts should review Board rulemakings.[35]

---

[31] Opp., at 16.

[32] Opp., at 16, where Plaintiffs cite and quote *AFL*, 308 U.S. at 409, and *Inland Container Corp. v. NLRB*, 137 F.2d 642, 643 (6th Cir. 1943), which merely restated the principle of *AFL*. *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1120 (5th Cir. 1974), with Plaintiffs reference, involved a type of Board proceeding under Section 10(k), known as "jurisdictional dispute" cases, and whether Board orders quashing notices of hearings in such proceedings are final orders.

[33] *See* Opp., at 7, 11, 16-17, where Plaintiffs cite and quote the following cases which lack probative value here because they deal with finality of various orders: *United Nat. Foods, Inc. v. NLRB*, 66 F.4th 536, 540-41 (5th Cir. 2023) (order concerning withdrawal of complaint); *Int'l Ladies' Garment Workers Union, Loc. 415-475 v. NLRB*, 501 F.2d 823, 827-828 (D.C. Cir. 1974) (same); *Laundry Workers Int'l Union, Loc. 221 v. NLRB*, 197 F.2d 701, 703 (5th Cir. 1952) (order refusing to issue a subpoena); *Manhattan Const. Co. v. NLRB*, 198 F.2d 320, 321 (10th Cir. 1952) (order dismissing a charge).

[34] *United Nat. Foods, Inc*, 66 F.4th at 541; *Shell Chem. Co.*, 495 F.2d at 1120; *Laundry Workers*, 197 F.2d at 703.

[35] "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. [They] ought not to control the judgment in a subsequent suit, when the very point is presented for decision." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821).

*Statutory context:* Plaintiffs lack any evidence of the requisite "firm indication" that Congress wanted NLRA rulemakings reviewed by district courts.[36] Their arguments about modern practice are irrelevant to past congressional intent.[37] Federal courts must independently determine their jurisdiction before resolving any issues on the merits.[38] "[T]he existence of unaddressed jurisdictional defects" in a prior decision "has no precedential effect."[39] Accordingly, "[o]bjections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."[40]

Plaintiffs' reading of the statute makes no practical sense and would contradict everything we know of congressional intent in enacting the NLRA. Unfair-labor-practice orders skip over district courts completely; the NLRA invokes district courts only if the Board affirmatively seeks relief from them as to ancillary matters; and the 1935 Congress repeatedly expressed opposition to district courts' involvement in federal labor policy.[41] The idea that the same Congress would have returned to those same district judges the power to review the Board's efforts to govern that same labor policy through rulemaking defies explanation. It would illogically turn district courts' "very very

---

[36] *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). As for Plaintiffs' observation that the NLRB has not sought to transfer case 21-cv-2443-RC (D.D.C.) to circuit court [Opp., at 170, since the case has been in abeyance since 2021, there has been no need to move to transfer.

[37] Opp., at 15, 17.

[38] *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94-95 (1998).

[39] *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) (citing *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 97 (1994); *United States v. More*, 7 U.S. (3 Cranch) 159, 172 (1805) (Marshall, C.J.) (bench decision).

[40] *Sebelius*, 568 U.S. at 153.

[41] *See, e.g.*, S. REP. NO. 74-573, *reprinted at* 2 *Legislative History of the National Labor Relations Act* 2300, 2305 (1949). Indeed, the passage of the Railway Labor Act, Norris- LaGuardia Act, and National Labor Relations Act between 1926 and 1935, represented a conscious break from the prior era of "government by injunction," in which federal district judges *de facto* controlled national labor policy. *See generally* William Forbath, *The Shaping of the American Labor Movement*, 102 HARV. L. REV. 1109, 1180-85, 1227-35 (1989).

14

minor role"[42] into a major, policy-setting role. Even if this reading is "textually permissible in a narrow sense," it is "structurally implausible."[43]

Here, district court review would be especially baffling. The Board's joint-employer standard developed over decades through a long line of adjudications dating from the 1960s to the 2010s, many of which arose from unfair-labor-practice cases subject to direct circuit-court review under Section 10(f).[44] It was not until 2020 that the Board first addressed this topic through informal rulemaking.[45] Courts should be loath to ascribe jurisdictional considerations to such a choice.

Plaintiffs also misread the D.C. Circuit's recent opinion in *AFL-CIO v. NLRB*,[46] in which it found that the particular rule at issue "concerns exclusively elections regarding union representation," and because Section 10 contains no reference to elections or representation, it was not subject to direct circuit-court review.[47] Here, however, there is no question that the Rule changes the substantive law applicable to future unfair-labor-practice cases.[48] And the D.C. Circuit squarely

---

[42] *Bokat*, 363 F.2d at 673.

[43] *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 682 (2010).

[44] *See* Standard for Determining Joint Employer Status, 88 Fed. Reg. 73,946, 73,946-48 (Oct. 27, 2023) (citing, *inter alia*, *Greyhound Corp.*, 153 NLRB 1488, 1495 (1965), *enfd.* 368 F.2d 776 (5th Cir. 1966); *NLRB* v. *Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982); *Browning-Ferris Indus. of Cal., Inc.*, 362 NLRB 1599 (2015), *aff'd in part, rev'd in part and remanded*, 911 F.3d 1195 (D.C. Cir. 2018)).

[45] Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11,184 (Feb. 26, 2020); *see NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("The Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion.").

[46] 57 F.4th 1023 (D.C. Cir. 2023); Opp., at 19-21.

[47] 57 F.4th at 1032. We note that as the present case does not present the issue of a rule exclusively affecting representation cases, the NLRB has not yet determined whether to acquiesce to or challenge the D.C. Circuit's ruling that review of such rules must originate in district court.

[48] Plaintiffs acknowledge that the Rule applies to unfair-labor-practice cases but argue it "must be more targeted towards unfair labor practices specifically" to be covered as a rule under Sec. 10(f). Opp., at 20. To begin with, that conflicts with *AFL-CIO v. NLRB*, which held only that "some kind of unfair labor practice [must be] at issue," 57 F.4th at 1032 (cleaned up), not that the rule in

found that a rule "concerning unfair labor practices" would be covered by Section 10(f) under its precedent.[49] The circuit court's carefully considered opinion squarely addressing the precise point of law at issue in this case should not lightly be discarded.[50]

### III. The interest of justice favors transfer, not dismissal.

Plaintiffs urge this Court to dismiss the suit if the Court finds it lacks jurisdiction.[51] While the Court has discretion to decide whether "the interest of justice" warrants transfer, dismissal (and, the subsequent appeal) would create a jurisdictional quagmire of precisely the sort that section 28 U.S.C. § 2112 and 28 U.S.C. § 1631 seek to avoid. Given that Plaintiffs have sought to intervene in the D.C. Circuit case, presenting substantive critiques of the same Final Rule that they challenge here,[52] the interest of justice favors transfer and finality, not duplicative litigation in multiple forums.

---

question must exclusively affect unfair-labor-practice cases. And while Plaintiffs claim that one could read even the Board's 2019 representation-case procedures rule to affect unfair labor practices indirectly, the appropriate test is not whether the rule uses the magic *words* "unfair labor practices," but whether it alters the substantive or remedial *law* of unfair labor practices—which this rule indisputably does.

[49] *AFL-CIO v. NLRB*, 57 F.4th at 1032 ("subsection 10(f) communicates that what is being directed to the court of appeals for the purpose of direct review is NLRB final orders (and, per binding precedent, rules) concerning unfair labor practices.") (cleaned up).

[50] Although Plaintiffs assert that sending review of unfair-labor-practice rules, like unfair-labor-practice decisions, to circuit courts would be "irrational" (Opp. at 19, quoting *Lorion*, 470 U.S. at 742), it would be irrational to locate initial review of such major NLRA policy decisions within district courts, to then be reviewed by circuit courts. *See Lorion*, 470 U.S. at 744 (describing the "waste" attendant in "duplication of the identical task" of reviewing an administrative record first in district, and then in circuit courts).

[51] Opp., at 19 n.6.

[52] Mot. to Intervene of Employer Groups, Doc. # 2029874, *SEIU v. NLRB*, No. 23-1309 (D.C. Cir. Dec. 4, 2023); *see also* Opp., at 19.

Respectfully submitted,

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
(No official bar number in Maryland)
Tel: (202) 273-2938
kevin.flanagan@nlrb.gov


/s/ Christine Flack
Christine Flack
*Supervisory Attorney*
(No official bar number in Maryland)
Tel: (202) 273-2842
Fax: (202) 273-4244
christine.flack@nlrb.gov

TYLER WIESE
*Senior Attorney*
Minnesota Bar No. 0329601
Tel: (952) 703-2891
tyler.wiese@nlrb.gov

National Labor Relations Board
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE
Washington, DC 20003
Fax: (202) 273-4244

*Attorneys for Defendants*

Dated: December 11, 2023

**CERTIFICATE OF SERVICE**

I certify that on December 11, 2023, I filed the foregoing document, Defendants' Reply in Support of Their Motion to Transfer to the D.C. Circuit for Lack of Subject-Matter Jurisdiction, with this Court using the CM/ECF filing system, and a copy is being served on the ECF Filers electronically by the Notice of Docket activity.

/s/ Christine Flack
Christine Flack
*Supervisory Attorney*
(No official bar number in Maryland)
Tel: (202) 273-2842
Fax: (202) 273-4244
christine.flack@nlrb.gov