**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Case No. 6:23-cv-00553-JCB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

INTRODUCTION ................................................................................................................9

STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................10

LEGAL STANDARDS ..................................................................................................17

ARGUMENT ..................................................................................................................18

   I.   The Rule is based on the NLRA's common-law based test to determine whether an entity is an "employer." ..........................................................................................................18

      A.   The Rule is grounded on the threshold common-law inquiry of whether an entity is an employer or a contractor, which Plaintiffs ignore entirely. ...........................................19

      B.   Reserved control has historically been considered sufficient to establish a common-law employment relationship. ..................................................................................................24

      C.   Indirect control has historically been considered sufficient to establish a common-law employment relationship. ..................................................................................................31

      D.   The Board adequately justified its rescission of the 2020 Rule, which conflicted with the common law and did not serve the purposes of the Act. ...............................................34

   II.   The Final Rule facilitates meaningful collective bargaining. .......................................36

   III.  The Board acted lawfully under the APA by properly balancing the competing interests and statutory rights of employees, employers, and labor organizations. ...................................41

CONCLUSION ...............................................................................................................43

## Table of Authorities

### Cases

*ACA International v. FCC,*
  885 F.3d 687 (D.C. Cir. 2018) ............................................................................................................43

*Adams & Associates Inc. v. NLRB,*
  871 F.3d 358 (5th Cir. 2017) .............................................................................................................30

*Airborne Freight Co.,*
  338 NLRB 597 (2002) .........................................................................................................................13

*Allied Chem. & Alkali Workers, Loc. 1 v. Pittsburgh Plate Glass Co.,*
  404 U.S. 157 (1971) ...................................................................................................................... 18, 28

*Am. Prop. Holding Corp.,*
  350 NLRB 998 (2007), *enforced in rel. part sub nom. SEIU Local 32BJ v. NLRB,*
  647 F.3d 435 (2d Cir. 2011) ...............................................................................................................13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .............................................................................................................................17

*Bannum Place of Saginaw, LLC v. NLRB,*
  41 F.4th 518 (6th Cir. 2022) ..............................................................................................................40

*Beth Israel Hosp. v. NLRB,*
  437 U.S. 483 (1978) .............................................................................................................................24

*Boire v. Greyhound Corp.,*
  376 U.S. 473 (1964) ................................................................................................................. 11, 12, 20

*Browning-Ferris Indus. of Cal. ("BFI 2015")*
  362 NLRB 1599 (2015), *enforcement denied and remanded,* 911 F.3d 1195 (D.C. Cir. 2018) .................13

*Browning-Ferris Indus. of Cal., Inc.,*
  369 NLRB No. 139 (July 29, 2020) ...................................................................................................15

*Browning-Ferris Industries of California, Inc. v. NLRB ("BFI 2018"),*
  911 F.3d 1195 (D.C. Cir. 2018) ..................................................................................................passim

*Butler v. Drive Automotive Industries of America, Inc.,*
  793 F.3d 404 (4th Cir. 2015) .............................................................................................................31

*Capehardt v. Murta,*
  145 S.W. 827 (Mo. Ct. App. 1912) ...................................................................................................27

*Cellnet Comms., Inc. v. FCC,*
    149 F.3d 429 (6th Cir. 1998) ..............................................................................................43

*Duffy Tool & Stamping, LLC v. NLRB,*
    233 F.3d 995 (7th Cir. 2000) ..............................................................................................39

*EEOC v. Global Horizons, Inc.,*
    915 F.3d 631 (9th Cir. 2019) ..............................................................................................34

*E.I. Du Pont de Nemours & Co. v. NLRB,*
    489 F.3d 1310 (D.C. Cir. 2007) ..........................................................................................39

*First National Maintenance Corp. v. NLRB,*
    452 U.S. 666 (1971) ............................................................................................................39

*Flagstaff Med. Ctr.,*
    357 NLRB 659 (2011), *enforced on other grounds*, 715 F.3d 928 (D.C. Cir. 2013) ................13

*Ford Motor Co. v. NLRB,*
    441 U.S. 488 (1979) ............................................................................................................18

*Goodman v. Wilson,*
    166 S.W. 752 (Tenn. 1914) ................................................................................................27

*Greyhound Corp.,*
    153 NLRB 1488 (1965), *enforced*, 368 F.2d 778 (5th Cir. 1966) ........................................12

*Hayward v. U.S. Dep't of Lab.,*
    536 F.3d 376 (5th Cir. 2008) ..............................................................................................17

*Herbert Harvey, Inc. v. NLRB,*
    424 F.2d 770 (D.C. Cir. 1969) ..........................................................................................38

*Hy-Brand Industrial Contractors, Ltd.,*
    365 NLRB No. 156 (Dec. 14, 2017) ..................................................................................14

*Hy-Brand Industrial Contractors, Ltd.,*
    366 NLRB No. 26 (Feb. 26, 2018) ....................................................................................14

*Laerco Transportation,*
    269 NLRB 324 (1984) ........................................................................................................13

*Maltz v. Jackoway-Katz Cap Co.,*
    82 SW2d 909 (Mo. 1934) ..................................................................................................25

*Management Training Corp.,*
    317 NLRB 1355 (1995) ......................................................................................................40

*Motor Vehicles Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Ins. Co.*,
463 U.S. 29 (1983) .................................................................................................... 17, 42

*N. Am. Soccer League v. NLRB*,
613 F.2d 1379 (5th Cir. 1980) ............................................................................30, 35, 43

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992) .........................................................................................................11

*Nat'l Fed'n of Fed. Emps., Loc. 1309 v. Dep't of Interior*,
526 U.S. 86 (1999) ............................................................................................................18

*New Jersey v. New York*,
523 U.S. 767 (1998) ..........................................................................................................43

*New York Indemnification Co. v. Industrial Accident Commission*,
14 P.2d 160 (Cal. Dist. Ct. App. 1932) ..........................................................................27

*NLRB v. Browning-Ferris Industries of Pennsylvania, Inc. ("BFI 1982")*,
691 F.2d 1117 (3d Cir. 1982) ................................................................................... 12, 29

*NLRB v. Deaton, Inc.*,
502 F.2d 1221 (5th Cir. 1974) ...............................................................................passim

*NLRB v. Steinberg*,
182 F.2d 850 (5th Cir. 1950) ...........................................................................................29

*NLRB v. Town & Country Elec., Inc.*,
516 U.S. 85 (1995) .............................................................................................11, 18, 33

*NLRB v. Wooster Div. of Borg-Warner Corp.*,
356 U.S. 342 (1958) ..........................................................................................................39

*NLRB v. Zayre Corp.*,
424 F.2d 1159 (5th Cir. 1970) ........................................................................................30

*Poly-Am., Inc. v. NLRB*,
260 F.3d 465 (5th Cir. 2001) ...........................................................................................17

*Rhoades v. Varney*,
39 A. 552 (Me. 1898) ........................................................................................................27

*Richard v. Ill. Bell Tel. Co.*,
383 N.E.2d 1242 (Ill. 1978) .............................................................................................28

*Rush Univ. Med. Ctr. v. NLRB*,
833 F.3d 202 (D.C. Cir. 2016) ........................................................................................24

*Sanitary Truck Drivers & Helpers Loc. 350 v. NLRB,*
    45 F.4th 38 (D.C. Cir. 2022) ................................................................. 15, 30, 31

*Sebelius v. Auburn Reg'l Med. Ctr.,*
    568 U.S. 145 (2013) ................................................................................ 17

*Singer Mfg. Co. v. Rahn,*
    132 U.S. 518 (1889) ............................................................................ 12, 25

*Squyres v. Heico Cos., LLC,*
    782 F.3d 224 (5th Cir. 2015) ................................................................... 43

*Sure-Tan, Inc. v. NLRB,*
    467 U.S. 883 (1984) ................................................................................ 18

*Tex. Clinical Labs, Inc. v. Sebelius,*
    612 F.3d 771 (5th Cir. 2010) ................................................................... 17

*Tex. World Serv. Co. v. NLRB,*
    928 F.2d 1426 (5th Cir. 1991) ..................................................... 30, 35, 43

*TLI, Inc.,*
    271 NLRB 798 (1984) ............................................................................ 13

*NLRB v. United Insurance Co. of America,*
    390 U.S. 254 (1968). ............................................................................... 20

*Vaughn Bros.,*
    94 NLRB 382 (1951) ............................................................................... 12

*Visiting Nurse Servs. of W. Mass. v. NLRB,*
    177 F.3d 52 (1st Cir. 1999) ...................................................................... 39

*White v. Morris,*
    152 S.E.2d 417 (Ga. Ct. App. 1966) ........................................................ 32

*Williams v. Shell Oil Co.,*
    18 F.3d 396 (7th Cir. 1994) ..................................................................... 28

**Statutes**

5 U.S.C. § 706(2)(A)-(C) .......................................................................... 17

29 U.S.C. § 151 ......................................................................................... 10

29 U.S.C. § 152(2) .................................................................................... 11

29 U.S.C. § 152(3) ................................................................................................................ 11, 28

29 U.S.C. § 156 ............................................................................................................................. 11

29 U.S.C. § 157 ............................................................................................................................. 11

29 U.S.C. § 158 ............................................................................................................................. 11

29 U.S.C. § 159 ............................................................................................................................. 11

29 U.S.C. § 160 ............................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................................ 8

**Regulations**

29 C.F.R. § 103.40 .................................................................................................................... 16, 34

**Federal Register**

*Joint Employer Status Under the National Labor Relations Act*,
    85 Fed. Reg. 11,184 (Feb. 26, 2020) ............................................................................... 15, 34

*Proposed Rule, Standard for Determining Joint-Employer Status*,
    87 Fed. Reg. 54,641 (Sept. 7, 2022) ................................................................................ 12, 16

*Proposed Rule, The Standard for Determining Joint-Employer Status*,
    83 Fed. Reg. 46,681 (Sept. 14, 2018) .................................................................................... 14

*Standard for Determining Joint Employer Status*,
    88 Fed. Reg. 73,946 (Oct. 27, 2023) ................................................................................ passim

**Other Authorities**

30 A.L.R. 1000 (1924) .................................................................................................................... 28

Restatement (First) of Agency § 2 ................................................................................................. 26

Restatement (Second) of Agency § 227 ......................................................................................... 28

Restatement (Second) of Agency § 220 ................................................................................28

Restatement (Second) of Agency § 5 ..................................................................................32

Defendants National Labor Relations Board, *et al.* (Board) are entitled to summary judgment pursuant to Local Rule CV-56 and Federal Rule of Civil Procedure 56, as there are no genuine issues of material fact concerning the Board's promulgation of a lawful Final Rule, *Standard for Determining Joint Employer Status*, 88 Fed. Reg. 73,946 (Oct. 27, 2023) (Rule or Final Rule) (Exhibit 1 attached), under the National Labor Relations Act (NLRA or Act) and the Administrative Procedure Act (APA). Plaintiffs Chamber of Commerce, *et al.*'s motion for summary judgment should be denied.

## INTRODUCTION

The Final Rule represents the culmination of an extensive effort by the Board to apply common-law employment concepts to the National Labor Relations Act's joint-employer standard. Adhering to guidance provided by the judiciary, and after drafting an extensive notice of proposed rulemaking and considering nearly 13,000 comments, the Board devised a carefully crafted architecture for determining when two or more entities qualify as joint employers under the NLRA. The new regulatory framework involves two steps. First, as a threshold matter, the entity in question must qualify as a common-law employer of the disputed employees (as opposed to, for instance, an independent contractor). Second, *if and only if* the entity is a common-law employer, then it must also have control over one or more essential terms and conditions of employment, as those are defined in the Rule, to qualify as a joint employer. At either step, the evidence of the entity's control can be in any form recognized at common law.

Plaintiffs claim that this Rule causes a parade of horribles that jeopardizes the very existence of shared employment in the United States. Their arguments, however, rest on a fundamental misunderstanding of the Rule—one that blatantly elides the threshold inquiry and incorrectly assumes that *any* reserved or indirect control will automatically create a joint-employment relationship. By misrepresenting what the Rule does and does not do, Plaintiffs obfuscate the legal issues and implications that are at stake. Two points clarify what Plaintiffs conceal:

1.      What the Rule *does do* is remove the fabricated requirement that control must always be direct, immediate, and substantial, and therefore cannot be contractually reserved or channeled via an intermediary. Such a stringent requirement is inconsistent with the common law and antithetical to the Act's purpose.

2.      What the Rule *does not do* is mandate that *any* exercise of reserved or indirect control is sufficient for a joint-employer finding. Rather, the inquiry takes full account of *who* is exercising control, *when*, and over *what* objects, to determine, in fidelity to the common law, whether an employment relationship exists. Only after this threshold showing is satisfied does the Rule's second step kick in—to assess whether control is levied over an essential term and condition of employment so as to confer joint-employer status and permit meaningful collective bargaining.

Plaintiffs' neglect of this threshold inquiry and distortion of the common law on control explain why its NLRA claims fail. Plaintiffs fare no better in attacking the rule on APA grounds, as the Board responded to the comments raised by Plaintiffs in the Rule and provided meaningful guidance to regulated parties. As such, the Board is entitled to judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

The NLRA effectuates the "policy of the United States . . . by encouraging the practice and procedure of collective bargaining."[2] The core substantive right of the Act lies in Section 7, which guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to

---

[1] Pursuant to LRCv 56(b) and the Court's order dated Nov. 17, 2023 [ECF No. 23, at 2], the Board agrees that fact-finding is not required. However, Plaintiffs have already filed a Statement of Undisputed Material Facts (SUMF) [Pls.' MSJ, ECF No. 10, 10-13], which the Board disputes on two grounds: (1) it distorts the historical development of Board law through myriad omissions and inaccurate statements; the NLRB responds to and corrects these misstatements through this SUMF; and (2) it contains improper legal arguments on whether the Board's joint-employer tests are consistent with the common law [*see* Pls.' MSJ 11-12, 14]; these are not statements of fact. The Board, however, does not dispute Plaintiffs' Statement of the Issues.

[2] 29 U.S.C. § 151.

bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."[3] Section 8, in turn, defines certain prohibited unfair labor practices for employers and unions; specifically relevant to this case, Section 8(a)(5) makes it unlawful for an employer "to refuse to bargain collectively with the representatives of his employees."[4] The duty to bargain collectively is outlined in Section 8(d) of the Act, which establishes parties' obligations "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment."[5]

These rights and prohibitions are enforced by the Board. The NLRA assigns the Board two principal responsibilities: preventing unfair labor practices,[6] and resolving questions concerning representation.[7] The Board typically carries out these responsibilities through case-by-case adjudication, but sometimes the Board has done so by rulemaking.[8]

In interpreting and applying the Act, courts and the Board have long recognized that two or more entities can serve as joint employers of a group of employees for purposes of the Act.[9] Because the NLRA's definitions of "employer" and "employee" are terse and unspecific,[10] the Board, with Supreme Court approval, relies on the common law of agency to guide its analysis of when a joint-employment relationship exists.[11] Throughout most of the NLRA's existence, the

---

[3] *Id.* § 157.

[4] *Id.* § 158(a)(5).

[5] *Id.* § 158(d).

[6] *Id.* § 160.

[7] *Id.* § 159.

[8] *Id.* § 156.

[9] *E.g.*, *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964); *cf.* 29 U.S.C. § 152(3) ("The term 'employee' … shall not be limited to the employees of a particular employer ….").

[10] *See* 29 U.S.C. § 152(2), 152(3).

[11] *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 92-95 (1995); *see Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–323 (1992) (recognizing that where Congress has used the bare statutory term "employee," courts should apply common-law concepts).

Board has consistently found that evidence of an entity's right to control a group of employees' terms and conditions of employment—whether exercised or reserved, and whether direct or indirect—was generally sufficient to demonstrate an employment relationship.[12]

In 1964, the Supreme Court issued *Boire v. Greyhound Corp.*,[13] its singular decision passing upon the Board's joint-employer jurisprudence. There, the Court explained that, under the Act, the issue of joint-employer status turns on whether an entity "possesse[s] sufficient control over the work of the employees to qualify as a joint employer," without speaking to any particular form that control may take.[14] The Court further noted a joint-employment determination is "essentially a factual issue" for the Board to decide.[15]

Over the next two decades, the Board's joint-employer test had not yet solidified, but it generally regarded an employer's right to control employees' terms or conditions of employment as relevant to—and in some cases determinative of—joint-employer status; the same was true for indirect control.[16] Then, in 1982, the Third Circuit's decision in *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.* ("*BFI 1982*"), held that the joint-employer standard turns on whether two or more employers "share or co-determine those matters governing essential terms and conditions of employment."[17] Importantly, the Third Circuit explicitly recognized the importance of reserved

---

[12] *See* 88 Fed. Reg. at 73,946-47, nn.2-3 (citing and discussing case law); *e.g.*, *Vaughn Bros.*, 94 NLRB 382, 383 (1951) (citing *Singer Mfg. Co. v. Rahn*, 132 U.S. 518 (1889)).

[13] 376 U.S. 473 (1964).

[14] *Id.* at 481.

[15] *Id.* On remand, the Board concluded, and the Fifth Circuit affirmed, that a joint-employer finding depends on a showing that the entity "share[d], or codetermine[d], those matters governing essential terms and conditions of employment." *Greyhound Corp.*, 153 NLRB 1488, 1495 (1965), *enforced*, 368 F.2d 778 (5th Cir. 1966).

[16] *See* 88 Fed. Reg. at 73,946-47 & nn.2-3; *Proposed Rule, Standard for Determining Joint-Employer Status*, 87 Fed. Reg. at 54,642-43 & nn.2-9, 11-14 (Sept. 7, 2022); *see Browning-Ferris Indus. of Cal.*, 362 NLRB 1599, 1607 (2015), *enforcement denied and remanded*, 911 F.3d 1195 (D.C. Cir. 2018).

[17] 691 F.2d 1117, 1123 (3d Cir. 1982) (emphasis removed).

control, emphasizing that the joint-employer inquiry turns on whether "one employer . . . has *retained* for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."[18]

In *Laerco Transportation*[19] and *TLI, Inc.*,[20] two 1984 decisions, the Board adopted the Third Circuit's standard, and further held that "there must be a showing that the employer meaningfully affects matters relating to the employment relationship such as hiring, firing, discipline, supervision and direction."[21] But then, the Board began introducing additional constraints, going well beyond the *BFI 1982* standard. For example, in 2002, the Board held without explanation that control must be "direct and immediate"—thereby removing consideration of indirect control.[22] And in 2007, the Board eliminated consideration of reserved control, tersely holding that it "does not rely merely on the existence of such contractual provisions, but rather looks to the actual practice of the parties"—again, without reconciling its position with the common law.[23] Then, in 2011, the Board emphasized that even exercised control would be insufficient if "limited and routine."[24]

In the 2015 decision, *Browing-Ferris Industries of California, Inc.* ("*BFI 2015*"),[25] for the first time, the Board engaged in a detailed analysis of the common-law doctrine underpinning the joint-

---

[18] *Id.* (emphasis added).

[19] 269 NLRB 324 (1984).

[20] 271 NLRB 798 (1984).

[21] *Id.* at 798.

[22] *Airborne Freight Co.*, 338 NLRB 597, 597 n.1 (2002).

[23] *Am. Prop. Holding Corp.*, 350 NLRB 998, 1000 (2007), *enforced in rel. part sub nom. SEIU Local 32BJ v. NLRB,* 647 F.3d 435 (2d Cir. 2011).

[24] *Flagstaff Med. Ctr.,* 357 NLRB 659, 667 (2011), *enforced on other grounds,* 715 F.3d 928 (D.C. Cir. 2013).

[25] 362 NLRB 1599 (2015), *enforcement denied and remanded,* 911 F.3d 1195 (D.C. Cir. 2018).

employer analysis.[26] The Board determined that a two-part inquiry should apply, specifically: "The Board may find that two or more entities are joint employers of a single workforce *if* they are both employers within the meaning of the common law, *and if* they share or codetermine those matters governing the essential terms and conditions of employment."[27] The Board rejected control-based, actual-exercise restrictions rooted, without explicit explanation, in the previous three decades of its case law and emphasized that it is "[t]he right to control, in the common-law sense, [that] is probative of joint-employer status, as is the actual exercise of control, whether direct or indirect."[28]

While *BFI 2015* was on review in the D.C. Circuit, in September 2018, the newly constituted Board issued a notice of proposed rulemaking regarding the joint-employer standard.[29] In an about-face from the *BFI 2015* standard, the Board proposed requiring a putative joint employer to "possess and actually exercise substantial direct and immediate control over the employees' essential terms and conditions of employment in a manner that is not limited and routine."[30]

About two months later, the D.C. Circuit issued *Browning-Ferris Industries of California, Inc. v. NLRB* ("*BFI 2018*"),[31] which "uph[e]ld as fully consistent with the common law the Board's determination [in *BFI 2015*] that both reserved authority to control and indirect control can be relevant factors in the joint-employer analysis."[32] While the Court upheld the core components of

---

[26] *Id.* at 1611 ("The Board has never looked to the common law to justify the requirements that a putative joint employer's control be exercised and that the exercise be direct and immediate, not 'limited and routine.'").

[27] *Id.* at 1613 (emphasis added).

[28] *Id.* at 1614. In 2017, a new Board initially overruled *BFI 2015* in *Hy-Brand Industrial Contractors, Ltd.*, 365 NLRB No. 156 (Dec. 14, 2017). Two months later, it vacated the decision for ethical reasons related to recusal. 366 NLRB No. 26 (Feb. 26, 2018).

[29] *Proposed Rule, The Standard for Determining Joint-Employer Status*, 83 Fed. Reg. 46,681 (Sept. 14, 2018).

[30] *Id.* at 46,686.

[31] 911 F.3d 1195 (D.C. Cir. 2018).

[32] *Id.* at 1222.

the Board's joint-employer test, it remanded the case to the Board, with instructions to clarify and apply the indirect-control and essential-terms portions of its new standard.[33]

On February 26, 2020, the Board issued its first-ever final regulation to determine when two employers are joint employers under the NLRA ("2020 rule").[34] This regulation provided that a joint-employer finding required "substantial direct and immediate control over one or more essential terms and conditions of employment."[35] But in light of the intervening D.C. Circuit decision, *BFI 2018*, the Board slightly modified its proposed rule to "factor in" reserved and indirect control, though only to the extent those forms of control "supplement[] and reinforce[]" evidence of substantial, direct, and immediate control over essential terms and conditions of employment.[36]

Meanwhile, taking up the D.C. Circuit's remand in *BFI 2018*, the Board determined it would be "manifestly unjust" to apply its own *BFI 2015* standard retroactively to the parties in the case and declined to otherwise pass on the substantive joint-employer standard;[37] the union then petitioned for review of that determination.[38] On review, the D.C. Circuit held that the *BFI 2015* standard did not "represent[] the kind of clear departure from longstanding and settled law" that could justify the Board's retroactivity conclusion.[39] The court then reiterated that the Board could not resolve the joint-employer issue presented without explaining how, consistent with the common law, indirect control weighed in the context of the case.[40] The D.C. Circuit again remanded the case for the Board

---

[33] *Id.* at 1222-23.

[34] *Joint Employer Status Under the National Labor Relations Act*, 85 Fed. Reg. 11,184 (Feb. 26, 2020).

[35] *Id.* at 11,186.

[36] *Id.* at 11,186, 11,224.

[37] *See Browning-Ferris Indus. of Cal., Inc.*, 369 NLRB No. 139, slip op. at 1 (July 29, 2020).

[38] *Sanitary Truck Drivers & Helpers Loc. 350 v. NLRB*, 45 F.4th 38 (D.C. Cir. 2022).

[39] *Id.* at 44.

[40] *Id.* at 47.

to analyze the joint-employer issue, bearing in mind the court's holdings on the contours of the common law.

Then, on September 7, 2022, the Board issued the notice of proposed rulemaking for the Final Rule under review here.[41] In it, the Board proposed rescinding the 2020 rule and replacing it with one consistent with common-law agency principles, such that joint-employer status could be established "with evidence of indirect and reserved forms of control, so long as those forms of control bear on employees' essential terms and conditions of employment"—a position supported by the D.C. Circuit's *BFI* decisions and the common law.[42]

Following an extended comment period, on October 27, 2023, the Board published the final rule to be codified at 29 C.F.R. § 103.40 ("Rule" or "Final Rule").[43] The Rule provides that to be a joint employer, the entity must, as a threshold matter, "ha[ve] an employment relationship . . . under common-law agency principles" with a particular group of employees.[44] If such a relationship exists, the inquiry proceeds to whether two or more entities "share or codetermine those matters governing employees' essential terms and conditions of employment,"[45] which means that the employer must "possess the authority to control (whether directly, indirectly, or both) or . . . exercise the power to control (whether directly, indirectly, or both) one or more of the employees' essential terms and conditions of employment."[46] The Rule then sets forth an exhaustive, closed list of seven categories of essential terms and conditions of employment.[47] As a separate matter, the Board found that the

---

[41] 87 Fed. Reg. at 54,641.

[42] *Id.* at 54,645.

[43] *See Standard for Determining Joint Employer Status*, 88 Fed. Reg. at 73,946.

[44] *Id.* at 74,017 (to be codified at § 103.40(a)).

[45] *Id.* (to be codified at § 103.40(b)).

[46] *Id.* (to be codified at § 103.40(c)).

[47] *Id.* at 74,017-18 (to be codified at § 103.40(d)(1)-(7) (listing categories)).

2020 rule contravened common-law agency principles by imposing severe limitations on the types of control that count in finding a joint employer. Thus, the 2020 rule was "not a permissible interpretation of the Act," but instead "undermined the Act's protections for employees who work in settings where multiple firms possess or exercise control over their essential terms or conditions of employment."[48] For these reasons, the Board rescinded the 2020 rule.[49]

## LEGAL STANDARDS

Summary judgment is appropriate when the movant "show[s] that there is no genuine issue as to any material fact and [it] is entitled to judgment as a matter of law."[50] Under the APA, a court may set aside a rule only where it is "arbitrary, capricious, or manifestly contrary to the statute."[51] Review of agency action is both narrow and "highly deferential to the administrative agency whose final decision is being reviewed."[52]

The Fifth Circuit "review[s] questions of law de novo," but "defer[s] to the legal conclusions of the Board if reasonably grounded in the law and not inconsistent with the Act."[53] For those portions of the Rule concerning purely the Section 2(2) definition of "employer" under the Board's distillation of common-law principles, *de novo* review applies. However, the Board exercised its expertise in collective bargaining to define a joint employer's bargaining obligation in Section

---

[48] *Id.* at 73,948, 73,974.

[49] *Id.* at 73,984 (noting severability of decision to rescind the 2020 rule, such that "if a reviewing body were to disapprove the final rule in its entirety, the Board's action in rescinding the 2020 rule should still be given effect.").

[50] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(C)).

[51] *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 157 (2013) (quotation omitted); 5 U.S.C. § 706(2)(A)-(C); *see also Hayward v. U.S. Dep't of Lab.*, 536 F.3d 376, 379 (5th Cir. 2008).

[52] *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010); *Motor Vehicles Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (given "narrow" scope of review under arbitrary-and-capricious standard, "a court is not to substitute its judgment for that of the agency"); *id.* (agency's rule survives arbitrary-and-capricious review if "rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute").

[53] *Poly-Am., Inc. v. NLRB*, 260 F.3d 465, 476 (5th Cir. 2001).

104.30(h) of the Rule. This subsection reflects a policy judgment on how to apply NLRA Sections 8(d) and 8(a)(5) to "employers," consistent with Section 1's policy of protecting collective workplace rights and encouraging collective bargaining. Because this portion of the Rule does not turn on pure questions of common law, the Board's view is entitled to deference.[54]

## ARGUMENT

I.      **The Rule is based on the NLRA's common-law based test to determine whether an entity is an "employer."**

Plaintiffs readily accept the Rule's foundational premise that the definition of "employer" under Section 2(2) of the NLRA is governed by common-law principles, and that those same principles apply in determining whether an entity is a joint employer under the NLRA.[55] To determine the types of control sufficient to establish joint-employer status, the Rule focuses "first and foremost [on] the 'established' common-law definitions at the time Congress enacted the National Labor Relations Act in 1935 and the Taft-Hartley Amendments in 1947."[56]

Plaintiffs claim that the Rule fails to distinguish common-law employment relationships from independent contractors, and that the common law requires direct and immediate control to

---

[54] *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891 (1984) (as Congress assigned the task of defining "employee" under the Act to the Board, "[its] construction of that term is entitled to considerable deference, and we will uphold any interpretation that is reasonably defensible"); *NLRB v. Town & Country Elec., Inc.*, 516 U.S. at 94 (same); *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495 (1979) (Board's "judgment as to what is a mandatory bargaining subject is entitled to considerable deference"); *Allied Chem. & Alkali Workers, Loc. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168 (1971) ("In doubtful cases resort must still be had to economic and policy considerations to infuse § 2(3)"—which defines 'employee'—"with meaning."); *see also BFI 2018*, 911 F.3d at 1208, n.2 (deference afforded to Board under *Sure-Tan* extends "to broader policy questions about promoting effective collective bargaining"); *cf. Nat'l Fed'n of Fed. Emps., Loc. 1309 v. Dep't of Interior*, 526 U.S. 86, 99 (1999) (affording deference to Federal Labor Relations Authority on "matters of whether, when, and where" collective bargaining is required under statute).

[55] *See* Pls.' MSJ 17-18; 88 Fed. Reg. at 73,948.

[56] 88 Fed. Reg. at 73,948 (quoting *BFI 2018*, 911 F.3d at 1209); *cf. Town & Country Elec., Inc.*, 516 U.S. at 92–95 (where Congress uses the term "employee" in a statute without clearly defining it, the Court assumes that Congress "intended to describe the conventional master-servant relationship as understood by common-law agency doctrine").

form an employment relationship. Contrary to Plaintiffs' claims, however, the Rule respects the nuanced, varied differences that exist between employment-related controls and routine company-to-company contractual controls or independent-contractor relationships. These distinctions are drawn under the Rule's threshold step, which Plaintiffs ignore. And, as the Board exhaustively demonstrates in the Rule, Plaintiffs are wrong to argue that the common law deems an entity an employer only if it actually exercises direct and immediate control over employees' terms and conditions of employment. The common law does not support that restrictive approach; instead, it has long regarded both reserved and indirect control as probative of an employment relationship.

### A. The Rule is grounded on the threshold common-law inquiry of whether an entity is an employer or a contractor, which Plaintiffs ignore entirely.

In the Final Rule, the Board honored the important distinction between joint-employment relationships and true independent-contractor (or non-employment) relationships. Subsection (a) codifies the Board's analytical approach and provides that an entity can only be "an employer of particular employees" within the meaning of NLRA Section 2(2) "if the employer has an employment relationship with those employees under common-law agency principles."[57] This subsection, which functions as the Rule's critical, threshold analytical step, explicitly requires a common-law inquiry and accords with Supreme Court and Fifth Circuit precedent. Plaintiffs, however, fail to discuss the threshold step in their briefing at all.[58]

The Board explained that applying the Rule requires "seeking guidance from common law material bearing on the independent-contractor determination to examine, *as a threshold matter under*

---

[57] 88 Fed. Reg. at 74,017 (to be codified at § 103.40(a)).

[58] By this and other means, Plaintiffs misrepresent what the Rule is and what it allows. Pls.' MSJ 9 (mischaracterizing the Rule), at 22 (misrepresenting what the rule "mandates"), at 24 (misrepresenting what the Rule "allows"). Plaintiffs also obscure what the Rule states and how it functions by re-advancing arguments made by the dissenting Board member *e.g.*, 88 Fed. Reg. at 73,991, and wholly ignoring the majority's response that the dissent "elides the threshold significance of § 103.40(a)." *Id.* at 73,986.

*Section 103.40(a)*, whether a common-law employer-employee relationship exists between a putative joint employer and particular employees."[59] The Rule states that the Board will not give weight to evidence of indirect control that is indicative of either a true independent-contractor relationship[60] or "a kind of control that is an ordinary incident of company-to-company contracting."[61]

The Rule thus facilitates a notoriously difficult and fact-dependent starting inquiry into whether a particular relationship is one of employment or not. Through iterative applications of the Rule in individual cases, non-employment relationships will be identified and moored off from joint-employer findings. That overarching approach squares perfectly with the existing common-law test for employment used by federal courts in independent-contractor cases. As the Supreme Court recognized long ago in *NLRB v. United Insurance Co. of America*:

> There are innumerable situations which arise in the common law where it is difficult to say whether a particular individual is an employee or an independent contractor . . . . [T]here is no shorthand formula or magic phrase that can be applied to find the answer, but all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.[62]

Fifth Circuit precedent likewise recognizes as axiomatic that "the employee-independent contractor dichotomy" is "an area as fraught with technical distinctions and . . . dependent on factfindings."[63]

---

[59] *Id.* at 73,951 (emphasis added). The familiar and settled caselaw fulcrum for that "threshold" determination is set forth in footnote 392 of the Rule, in addition to the sources cited and discussed throughout the Rule, particularly in footnotes 17-19, and the accompanying text.

[60] *Id.* at 73,955; *see also id.* at 73,955 n.52 (citing D.C. Circuit's statement in *BFI 2018*, 911 F.3d at 1221, that a joint employer's control must "bear on the essential terms and conditions of employment and not on the routine components of a company-to-company contract").

[61] *Id.* at 73,955.

[62] 390 U.S. 254, 258 (1968); *see Boire v. Greyhound Corp.,* 376 U.S. at 481 (whether a joint-employer relationship exists is "essentially a factual question").

[63] *NLRB v. Deaton, Inc.*, 502 F.2d 1221, 1228 (5th Cir. 1974). The court in *Deaton* further noted that it is not the court's "province to insure an abstract and academic consistency in Board decisions" and will "decline to interfere with a Board decision reached through orderly processes under proper legal standards and supported by substantial evidence." *Id.*

An equally fact-dependent and varied inquiry is required to determine whether an entity's control over workers is grounded in routine, company-to-company contractual provisions or otherwise insufficient to give rise to an employment relationship. Without apparent regard for these complicated realities or the necessity of viewing all the incidents of a relationship to decide if it indicates common-law employment, Plaintiffs complain that "[t]he Rule provides no rubric for distinguishing" between a true independent-contractor relationship and an employment relationship.[64] Noticeably lacking from their argument, though, is any recognition of the Board's head-on responses to this very concern. The Board concluded that distinctions among different types of contracting relationships are best rendered through case-by-case adjudication:

> [T]he joint-employer inquiry is essentially factual and requires examining all of the incidents of a particular relationship on a particular record. Small differences in *how* control has been indirectly exercised, *when,* and *over what* will predictably determine whether the exercise of such control in individual cases counts, under the common law, as an ordinary incident of a company-to-company or true independent-contractor relationship or as evidence of the existence of a common-law employer-employee relationship.[65]

The Board found that the "innumerable variations in the ways that companies interact with each other, and with each other's employees" make it "impossible for the Board to provide a usefully comprehensive and detailed set of examples" ex ante.[66] Nevertheless, the Board was unequivocal that "control, as a normal incident of a third-party contract, does not establish the common-law

---

[64] Pls.' MSJ 30.

[65] 88 Fed. Reg. at 73,955. The Board responded to commenters who, foreshadowing Plaintiffs' position here, sought "more definitive guidance" and "suggest[ed] the common law is too vast or amorphous." *Id.* at 73,958. The Board explained that it was persuaded as to the correctness of its approach, given that "the Supreme Court has viewed common-law agency principles as sufficiently familiar and tractable to assist parties in interpreting and complying with other labor and employment statutes that use these terms." *Id.*; *see also id.* at 73,977 (addressing vagueness concerns).

[66] *Id.* at 73,955; *id.* at 73,955 n.55 (collecting authority for decision to use case-by-case adjudication), *id.* at 73,970 ("case-by-case adjudication . . . is the better approach") & n.244.

employment relationship,"[67] and gave valuable guidance as to how the test would be applied to confine all joint-employment findings within the borders of the common law.[68] This might not be the exact "rubric" Plaintiffs desire, but that does not make the Rule unlawful.[69]

As a further aid to distinguish routine contracting from joint-employment relationships, Section 103.40(f) provides guidance on evidence "not relevant" to the joint-employer inquiry.[70] The Board explained that "[m]any common steps franchisors take to protect their brands have no connection to essential terms and conditions of employment," rendering such evidence irrelevant.[71] Further, given the wide variation of company-to-company contractual provisions noted by commenters, the "most prudent path forward" is to analyze actual contracts in "case-by-case adjudication applying the joint-employer standard."[72] "To do otherwise might risk problems of both over- and under-inclusion and overlook important context . . . ."[73]

Plaintiffs strongly suggest that the Board's Final Rule would require a finding of joint-employer status based on de minimis, sporadic, or isolated instances of control.[74] This argument is

---

[67] *Id.* at 73,968 (discussing control that is immaterial to joint-employer status, including "indirect control, only by the terms of a third-party contract that sets basic expectations or ground rules for the production or delivery of goods or services").

[68] *See, e.g.*, *id.* (discussing contracts that memorialize pre-set legal requirements and government-contractor issues); *id.* at 73,970 (discussing construction-industry issues); *id.* at 73,971 (discussing franchise-specific concerns); *id.* at 73,949 n.17 & 73,951 n.30 (discussing contract terms on engaging workers and setting price terms).

[69] *See also* pp. 41-43, below (addressing sufficiency of Rule's guidance under APA principles).

[70] Specifically, "evidence of an entity's control over matters [1] that are immaterial to the existence of an employment relationship under common-law agency principles and [2] that do not bear on the employees essential terms and conditions of employment." *Id.* at 74,018 (to be codified at § 103.40(f)).

[71] *Id.* at 73,971 ("[W]e stress that many forms of control that franchisors reserve to protect their brands or trade or service marks (like those dealing with logos, store design or décor, or product uniformity) will typically not be indicative of a common-law employment relationship.").

[72] *Id.* at 73,970.

[73] *Id.*

[74] Pls.' MSJ 24-27.

misplaced. The Rule never indicates that a joint-employer relationship will categorically be found based on an isolated instance of reserved or indirect control. By the same token, it does not rule out joint-employer status simply because only a single form or instance of control has been shown. Rather, a throughline of the Rule is the principle that business relationships are "innumerable" and application of the Rule will be defined through "specific factual records."[75] This choice is logical because, for example, where an entity contractually reserves unilateral control over wages, that control could be dispositive, yet the contractual reservation happens only once.[76]

Subsections (b), (c), and (d) serve a different purpose than subsection (a); they are tailored to ensure that employers will only be considered joint employers under the NLRA if they can engage in meaningful collective bargaining. Per these subsections, an employer must "share or codetermine" one or more "essential terms and conditions of employment," which is cabined to seven exhaustive categories of core working conditions. Then, Subsection (f) clarifies the import of this list, noting that any "control over matters that do not bear on" those specific categories, is "not relevant to" joint-employer status.[77] In this way, the Rule ensures that entities that have a common-law employment relationship with a group of employees will be considered joint employers under the NLRA only if their ability to participate in meaningful bargaining is evident. Although Plaintiffs express concern that "routine components of company-to-company contracts may indirectly impact essential terms,"[78] the concern is unfounded. Under the threshold step of the Rule that Plaintiffs

---

[75] 88 Fed. Reg. at 73,955 & n.55.

[76] *See id.* at 73,961.

[77] *Id.* at 74,983. It is important to note that control over such "non-essential" matters would be relevant to "whether a common-law employment relationship exists" under Section 102.30(a), *id.* at 73,981-82, which considers "all of the incidents of the relationship." *Id.* at 73,955 (cleaned up).

[78] Pls.' MSJ 30-31.

largely ignore, routine contractual relationships would be distinguished from joint-employment relationships from the outset.

In any event, Plaintiffs merely beg the questions—what is a "routine component" of company contracting and what is an "indirect impact"? In agreement with overwhelming judicial consensus that such questions are nettlesome, the Board concluded that it could not answer them with a bright-line test.[79] This choice was lawful.[80] Indeed, nothing requires the Board to definitively state who is and is not an independent contractor, or what is or is not a routine company-contracting provision, in absolute, unequivocal terms. Here, the Board reasonably concluded that it would be "impossible" to definitively answer those questions through rulemaking, given the "infinite combinations of events"[81] and contractual terms that may arise.[82]

In sum, the Rule provides the "legal scaffolding . . . within traditional common-law bounds" that Plaintiffs decry as absent.[83] At its core, Plaintiffs' argument that the Rule fails to distinguish joint employers from independent-contractor relationships proceeds from a flawed premise: i.e., that an employment relationship exists only if there is direct, immediate, and substantial control over employees' terms and conditions of employment. That is not so, as shown below.

### B. Reserved control has historically been considered sufficient to establish a common-law employment relationship.

The 2023 Rule includes an encyclopedic survey of the common law of agency as it relates to reserved control at the time of the Act's Taft-Hartley amendments. That survey leaves no room for

---

[79] The Board made clear it "does not presuppose the 'employer' status of an entity—such as the principal in a true independent-contractor relationship—that possesses or exercises only such immaterial forms of control." 88 Fed. Reg. at 73,956.

[80] *See also Rush Univ. Med. Ctr. v. NLRB,* 833 F.3d 202, 206–07 (D.C. Cir. 2016) (affirming Board's interpretation of its final rule on healthcare bargaining units through adjudication).

[81] *Beth Israel Hosp. v. NLRB,* 437 U.S. 483, 500 (1978) (internal quotation marks and citation omitted).

[82] 88 Fed. Reg. at 73,955.

[83] *BFI 2018,* 911 F.3d at 1220.

doubt that reserved control has deep roots in the common law. For example, in finding that a worker was an employee (as opposed to independent contractor), the Supreme Court explained in *Singer Manufacturing. Co. v. Rahn* that "the relation of master and servant exists whenever the employer *retains the right* to direct the manner in which the business shall be done, as well as the result to be accomplished."[84] Consistent with this principle, the Court *did not* look to the actual practice of the parties under the contract for work; rather, as the Board explained in the Final Rule, "the Court relied solely on the parties' contract and did not discuss whether or in what manner the company had ever actually exercised any control over the terms and conditions under which the worker performed his work."[85] This position, as the Board explained further, was consistently adopted by courts throughout the country in the time between *Singer* and the passage of the Taft-Hartley Amendments in 1947.[86]

The Board also pointed to over twenty contemporaneous cases in both state and federal courts—again, all ignored by Plaintiffs—supporting the primacy of reserved control in the employment inquiry.[87] The Board highlighted, for example, *Maltz v. Jackoway-Katz Cap Co.*, where the Missouri Supreme Court found that two employers jointly employed an employee under the common law, posing "the essential question" as "not what the companies did when the work was being done, but whether they had a *right* to assert or exercise control."[88] The Board also pointed out

---

[84] 132 U.S. 518, 523 (1889) (emphasis added).

[85] 88 Fed. Reg. at 73,949. Similarly, in two other decisions cited by the Board around the turn of the century, the Supreme Court focused on the "*right* of control," not its exercise, in determining whether a worker qualified as an employee. *Id.* at 73,949 n.17 (citing *Chicago Rock Island & Pac. Ry. Co. v. Bond,* 240 U.S. 449, 456 (1916) and *Little v. Hackett,* 116 U.S. 366, 376 (1886)).

[86] *Id.* at 73,949.

[87] *Id.* at 73,949 & nn.18-19 and cases cited therein.

[88] *Id.* (citing *Maltz v. Jackoway-Katz Cap Co.*, 82 S.W.2d 909, 912, 918 (Mo. 1934) (emphasis added)).

D.C. Circuit precedent from 1945 plainly stating "it is the right to control, not control or supervision itself, which is most important."[89]

Secondary compendiums also fully support that the *right to control*, not the exercise thereof, was the common law's focus in 1947. For example, the Restatement (First) of Agency defined a "master" as a "principal who employs another to perform service in his affairs and who controls *or has the right to control* the physical conduct of the other in the performance of the service," and a servant as "employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled *or is subject to the right of control* by the master."[90] Other secondary sources similarly emphasize that it is the "right of control"—not its exercise—that was considered determinative under common law.[91] Accordingly, the Board correctly determined that "the existence of a putative employer's reserved authority to control the details of the terms and conditions under which work was performed sufficed to establish a common-law employer-employee relationship without regard to whether or in what manner such control was exercised."[92]

Reliance on reserved control serves the interests of employers and employees. As the Board explained, employers are empowered to "control their potential status as joint employers under the Act, ex ante, based on their freely chosen contractual arrangements."[93] After all, contractual language carries "legal force and effect without respect to whether or not contractually reserved authority is ever exercised."[94] Meanwhile, employees' interests are also served because they gain certainty that

---

[89] *Id.* (quoting *Grace v. Magruder,* 148 F.2d 679, 681 (D.C. Cir. 1945)).

[90] *Id.* at 73,950 (quoting RESTATEMENT (FIRST) OF AGENCY § 2 (1933)).

[91] *Id.* at 73,949-50 (citing *General discussion of the nature of the relationship of employer and independent contractor*, 19 A.L.R. 226, § 7 & n.1 (1922) and 35 Am. Jur. *Master and Servant* § 3 (1st ed. 1941)).

[92] *Id.* at 73,950.

[93] *Id.* at 73,961.

[94] *Id.*

those who possess the authority to determine their terms and conditions of employment—and may exercise such authority in the future—will be present at the bargaining table.

Rather than addressing *any* of the reserved control precedent cited in the Rule, Plaintiffs point to a series of state court cases that, far from supporting their arguments, confirm the common law's recognition of reserved control.[95] *Rhoades v. Varney* found that the duty-of-care standard for employers was "implied from the *contract of employment*," not necessarily the actual practices of the parties.[96] *New York Indemnification Co. v. Industrial Accident Commission* phrased the standard as the *"right to exercise control"* over the employees' work—not its actual exercise.[97] *Goodman v. Wilson* similarly held that the master-servant relationship "is founded on the power of control which the superior has *a right to exercise*."[98] And in *Capehardt v. Murta*, the Missouri Court of Appeals characterized the "most important question" as negligence, not joint employment. Moreover, the court found a joint-employment relationship when the disputed principal merely "engaged himself in looking over the farm" and employee paychecks were signed by both purported joint employers. But neither fact alone would satisfy the "substantial and direct" standard that Plaintiffs claim was "widely understood" to be the common law.[99] How can these cases conclusively prove that "direct and immediate control" is required under the common law, as Plaintiffs argue, when each one incorporates reserved control as an essential part of the master-servant test?

---

[95] Pls.' MSJ 18.

[96] 39 A. 552, 553 (Me. 1898) (emphasis added).

[97] 14 P.2d 160, 162 (Cal. Dist. Ct. App. 1932) (emphasis added).

[98] 166 S.W. 752, 753 (Tenn. 1914) (emphasis added).

[99] 145 S.W. 827, 829 (Mo. Ct. App. 1912).

The chief secondary source cited by Plaintiffs, Restatement (Second) of Agency Section 227, "Servant Lent to Another Master,"[100] similarly fails to support requiring direct and immediate control.[101] Section 227 clarifies that "[w]hether or not the person lent . . . becomes the servant of the one whose immediate purposes he serves depends in general upon the factors stated in Section 220(2)."[102] The Section 220(2) factors, in turn, focus primarily on "the extent of control which, *by the agreement,* the master *may* exercise over the details of the work."[103]

Plaintiffs' attempt to leverage legislative history also falls flat.[104] While the Taft-Hartley Congress may have mentioned "direct supervision" in the context of a House Report discussing the definition of "employee" under the Act, the definition on which Congress ultimately settled did not codify any understanding that a statutory employee can only be "directly" supervised.[105] And even

---

[100] Plaintiffs wrongly claim that the Restatement (Second) of Agency was in effect "about 15 years before the Taft-Hartley Amendments" [Pls.' MSJ 18]. At the time of Taft Hartley's passage, however, 1933's Restatement (First) of Agency was in effect. *See BFI 2018,* 911 F.3d at 1213 (discussing First and Second Restatements).

[101] Plaintiffs' reliance on the related "loaned servant" common-law doctrine (Pls. MSJ 20) is misplaced. The loaned servant doctrine turns on whether an employee "is wholly free from the control of the first employer and wholly subject to the control of the second employer." *Williams v. Shell Oil Co.,* 18 F.3d 396, 400 (7th Cir. 1994) (quotation omitted). Importantly, under that doctrine, "the second employer, not the first, would be liable for the employee's negligence." *Richard v. Ill. Bell Tel. Co.,* 383 N.E.2d 1242, 1249 (Ill. 1978). Thus, this doctrine sheds no light on the level of control required under the joint-employer doctrine, in which both control and liability are shared between two entities.

[102] RESTATEMENT (SECOND) OF AGENCY § 220, cmt. a (1958).

[103] *Id.* § 220(2) (emphasis added). Plaintiffs, in passing, cite to another secondary source, 30 A.L.R. 1000 (1924) (Pls.' MSJ 18), but to no avail as it "*presupposes* the relation of master and servant . . . and . . . is not concerned with cases which turn on the question whether the relation was that of master and servant or of independent contractor and contractee."

[104] Pls. MSJ 19.

[105] *See* 29 U.S.C. § 152(3). *Allied Chemical* similarly dealt with the definition of employee, not employer, in finding that retired workers were not employees under the Act because "the ordinary meaning of 'employee' does not include retired workers; retired workers have ceased to work for another for hire." 404 U.S. 157, 168 (1971). This holding sheds no light on the question presented here, whether individuals who are *currently* working for multiple entities are jointly employed.

more relevant to the present discussion of joint-*employer* status, the statutory definition of "employer" does not limit that category to those who directly supervise employees. Indeed, if anything, the statutory language "textually indicates that the statute looks at all probative indicia of employer status, whether exercised 'directly or indirectly.'"[106]

Nor is there any conflict between the Final Rule's treatment of reserved control and the standard adopted by the Third Circuit in *BFI 1982*, where the court found joint employment exists when "two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment."[107] There, the Third Circuit characterized the inquiry as whether one employer "has *retained* for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."[108] The D.C. Circuit in *BFI 2018* similarly saw no conflict between the *BFI 1982* standard (which it endorsed) and consideration of reserved and indirect control, which it unequivocally held is required by the common law.[109]

Contrary to Plaintiffs' claims, the Fifth Circuit has not ignored reserved control in determining whether a common-law employment relationship exists. In discussing the right to control in the context of an independent-contractor issue, the Court stated in *NLRB v. Deaton, Inc.* that "[i]t is the right and not the exercise of control which is the determining element," and indeed, "numerous decisions have stressed that a company's right to control, even if not exercised, makes workers employees."[110] And in the context of joint-employer issues, this Circuit has recognized that

---

[106] *BFI 2018*, 911 F.3d at 1216 (quoting 29 U.S.C. § 152(2)).

[107] *BFI 1982*, 691 F.2d at 1124; *contra* Pls.' MSJ 21.

[108] *Id.* at 1123.

[109] *BFI 2018*, 911 F.3d at 1209.

[110] 502 F.2d at 1224 (citing *Deaton Truck Line, Inc. v. NLRB,* 337 F.2d 697 (5th Cir. 1964)); *see NLRB v. Steinberg*, 182 F.2d 850, 857 (5th Cir. 1950) ("It is the right and not the exercise of control which is the determining element.").

"[t]he existence of a joint employer relationship depends on the control which one employer exercises, *or potentially exercises*, over the labor relations policy of the other."[111] Plaintiffs themselves quote language from another Fifth Circuit case, *NLRB v. Zayre Corp.,* stating that an employer who "exercised or *had the potential to exercise* substantial control over the employment practices of [employees] was in practical effect a joint-employer."[112] And the language cited by Plaintiffs from *Adams & Associates Inc. v. NLRB*, suggesting that reserved control is insufficient to establish a joint-employer relationship, notably does not follow from any new or different understanding of the common law.[113] Rather, *Adams & Associates* was based on the Fifth Circuit's understanding of then-current Board law, which required a showing of direct and immediate control for an entity to be deemed a joint employer under the Act. Importantly, the Court of Appeals had no occasion to grapple with the inconsistency between the Board's then-current joint-employer standard and the common law, because no party challenged the standard.

Any doubts regarding whether reserved control is part of the established common law are laid to rest by the D.C. Circuit's decisions in *BFI 2018* and *Sanitary Truck Drivers.*[114] In *BFI 2018,* the court carefully examined the common law and determined that precedent in the Supreme Court, the D.C. Circuit, and state courts all consistently recognized that "unexercised control bears on employer status."[115] The court further observed that as "the right to control runs like a *leitmotif* through the Restatement (Second) of Agency,"[116] this "element of the Board's joint employer

---

[111] *N. Am. Soccer League v. NLRB,* 613 F.2d 1379, 1382 (5th Cir. 1980) (emphasis added); *see Tex. World Serv. Co. v. NLRB,* 928 F.2d 1426, 1432 (5th Cir. 1991) (citing same standard).

[112] Pls.' MSJ 26 (quoting *NLRB v. Zayre Corp.,* 424 F.2d 1159, 1165 (5th Cir. 1970)) (emphasis added).

[113] 871 F.3d 358, 378 (5th Cir. 2017).

[114] 45 F.4th 38 (D.C. Cir. 2022).

[115] 911 F.3d at 1210.

[116] *Id.* at 1211.

standard has deep roots in the common law."[117] Several years later, in *Sanitary Truck Drivers*, the court even criticized the Board for its *failure* to consider reserved control.[118] In short, Plaintiffs get it exactly backwards as to the common law, which has consistently relied on *reserved* control, without demanding that it be exercised, let alone exercised in a direct and immediate fashion.

### C. Indirect control has historically been considered sufficient to establish a common-law employment relationship.

Consideration of indirect control is equally grounded in the Act and the common law. Starting with the Act itself, as the Board explained, "the definition of 'employer' set forth in Section 2(2) textually indicates that the statute looks at all probative indicia of employer status, whether exercised 'directly or indirectly' and therefore that the Act expressly recognizes that agents acting 'indirectly on behalf of an employer could also count as employers.'"[119]

The common law likewise supports consideration of indirect control. Indeed, in *BFI 2018,* the D.C. Circuit "uph[e]ld as fully consistent with the common law the Board's determination that . . . indirect control can be [a] relevant factor[] in the joint employer analysis."[120] The Fourth Circuit's decision in *Butler v. Drive Automotive Industries of America, Inc.* further confirms the point.[121] There, as the Board noted, the court found a joint-employer relationship "based primarily on the entity's exercise of indirect control over the employees' discipline and discharge by recommending discipline and discharge decisions which were implemented by the employees' direct employer."[122] Likewise, the Fifth Circuit has long recognized that indirect control is a factor—potentially

---

[117] *Id.* at 1199.

[118] 45 F.4th at 47.

[119] 88 Fed. Reg. at 73,954 (quoting *BFI 2018*, 911 F.3d at 1216) (cleaned up).

[120] 911 F.3d at 1222.

[121] 793 F.3d 404 (4th Cir. 2015).

[122] 88 Fed. Reg. at 73,954 (citing *Butler,* 793 F.3d at 415).

determinative—in evaluating whether a common-law employment relationship exists. Thus, it held in *NLRB v. Deaton, Inc.* that because a trucking company had "indirect control over nonowner drivers" employed by separate entities, those drivers "were sufficiently under Deaton's control to make them Deaton's employees under common law agency principles."[123] State court decisions interpreting the common law have similarly recognized the importance of indirect control in the employer analysis.[124]

The common law's inclusion of indirect control in the employer analysis is logical and necessary to prevent parties from evading joint-employer liability by funneling control through an intermediary. For example, a contractor's demand that its subcontractor discharge an employee or face termination of the contractual relationship carries the same force regardless of whether the message is ultimately conveyed to the employee by the contractor itself or the subcontractor.[125] With good reason, "the common law has never countenanced the use of intermediaries or controlled third parties to avoid the creation of a master-servant relationship."[126] To hold otherwise "would allow manipulated form to flout reality."[127]

Plaintiffs' primary argument to the contrary rests not on any specific challenge to these common-law holdings regarding indirect control, but rather on the Board's use of the "sub-servant" doctrine set forth in Restatement Section 5.[128] The Board, however, merely followed the D.C.

---

[123] 502 F.2d at 1223 n.3, 1226-27.

[124] *See* 88 Fed. Reg. at 73,963 (citing *BFI 2018*, 911 F.3d at 1216-17); *e.g.*, *White v. Morris*, 152 S.E.2d 417, 419 (Ga. Ct. App. 1966) ("[E]vidence and inferences therefrom indicating [an employer's] indirect control of [another employee's] work are relevant for consideration" because "alleged relationship can exist by virtue of indirect control of the servant's performance as well as by direct control.").

[125] The Fifth Circuit relied, in part, on a similar fact pattern in finding an employment relationship in *Deaton, Inc. v. NLRB*. 502 F.2d at 1227.

[126] *BFI 2018*, 911 F.3d at 1217 (collecting sources).

[127] *Id.* at 1219.

[128] RESTATEMENT (SECOND) OF AGENCY § 5 (1958).

Circuit's lead in discussing the sub-servant doctrine as another indication of the common law's preoccupation with indirect control. As the court explained:

> Control that is exercised through an intermediary is a defining feature of the subservant doctrine. Much as the joint-employer inquiry arises in situations in which an employee has multiple masters at the same time, the subservant doctrine analogously governs arrangements in which an employee has, as simultaneous masters, both 'his immediate employer and his immediate employer's master.' Given the central role that indirect control plays in the subservant doctrine, there is no sound reason that the related joint-employer inquiry would give that factor the cold shoulder.[129]

The fact that one employer may not control another in every joint-employer situation, as Plaintiffs argue,[130] is irrelevant because the focus is on control exercised over employees' means and method of work. In both the sub-servant and joint-employment doctrines under the Act, control is relevant whether it is exercised directly by the purported joint employer or indirectly through an intermediary.[131]

Plaintiffs' overall argument is that indirect and reserved control have never been enough, standing alone, to establish a joint-employer relationship. This is simply untrue, as the Board demonstrated in the Rule's preamble. For example, the Board pointed to *EEOC v. Global Horizons, Inc.*, in which the Ninth Circuit based its joint-employer finding on the fact that the purported joint employer possessed the "power to control the manner in which housing, meals, transportation, and

---

[129] *BFI 2018*, 911 F.3d at 1217-18 (cleaned up).

[130] Pls. MSJ 24.

[131] Plaintiffs further contend (Pls.' MSJ 23) that the Restatement (Second) of Agency, in particular the definitions of "master" and servant" contained in Section 2 and 220, respectively, are not relevant sources of authority. This argument is flatly contradicted by Supreme Court precedent, as recognized by the D.C. Circuit in *BFI*. 911 F.3d at 1213 ("[T]he Supreme Court has repeatedly relied on the Restatement (Second) to answer questions of employment under the common law of agency.") (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 & n.31 (1989), and *Town & Country*, 516 U.S. at 94-95).

wages were provided to the Thai workers, *even if never exercised.*"[132] This case is not an anomaly.[133] Moreover, as explained above, nothing in the Rule mandates that the Agency find in a particular case that an entity is a joint employer based on any one type of control, however wielded. The portion of the rule allowing for joint-employer status under the Act based on reserved or indirect control alone comes into force only *after* a common-law employment relationship is established.

### D. The Board adequately justified its rescission of the 2020 rule, which conflicted with the common law and did not serve the purposes of the Act.

The Board's decision to rescind the 2020 rule and its attendant control-based restrictions is driven by the same common-law considerations that support the 2023 Rule.[134] As the Board correctly noted, the 2020 rule's extreme marginalization of reserved and indirect control runs directly counter to the common law, as described by the D.C. Circuit's *BFI 2018* decision, among other cases, and furthermore, "undermines the goals of Federal labor law."[135]

Under the 2020 rule's logic, the record could show that an entity had just signed an agreement reserving for itself the power to unilaterally determine all the terms and conditions of a sub-entity's employees, but unless such power has been exercised, the entity would not be considered a joint employer. That same entity could instruct supervisors of its sub-entity to

---

[132] 915 F.3d 631, 641 (9th Cir. 2019) (emphasis added).

[133] 88 Fed. Reg. at 73,953-54 & n.45 (citing cases where courts have found employment relationship based solely on reserved control); *see also Deaton, Inc.*, 502 F.2d at 1226-28 (relying primarily on evidence of indirect control to find employment relationship).

[134] As noted above, the 2020 rule requires "an entity to exercise *direct substantial and immediate* control over one or more essential terms or conditions" in order to qualify as a joint employer. 29 C.F.R. § 103.40(a) (emphasis added). Evidence of reserved and indirect control, under this standard, "is probative . . . *only to the extent* that it supplements and reinforces evidence of the entity's possession or exercise of direct and immediate control over a particular essential term and condition of employment." *Id.* (emphasis added); *see also* 85 Fed. Reg. at 11,235.

[135] 88 Fed. Reg. at 73,957.

terminate the employees, but without additional evidence of *direct* control, this too would be irrelevant.[136] Such results cannot be squared with the common law discussed above.[137]

Any doubt on this score is dispelled by the D.C. Circuit's decision in *Sanitary Truck Drivers*, which made clear that both reserved and indirect control are features of the common-law agency analysis and accordingly must form a part of the Board's joint-employer analysis.[138] Indeed, the court "took great pains to inform the Board [in *BFI 2018*] that the failure to consider reserved or indirect control is inconsistent with the common law of agency."[139] The Fifth Circuit has likewise required the Board to consider not only exercised, but reserved and indirect control, in prior joint-employer cases.[140] The Board was therefore correct as a matter of law in finding "that the 2020 rule is contrary to common-law agency principles in requiring that an entity actually exercise control over another employer's employees in order to be found a joint employer."[141]

The Board's decision to rescind the 2020 rule also rested on the compelling policy considerations embedded in Section 1 of the Act. In the Board's view, the narrow joint-employer standard in the 2020 rule "undermined the Act's protections for employees who work in settings where multiple firms possess or exercise control over their essential terms and conditions of employment."[142] By broadening the standard within common-law bounds, the Board sought "to ensure uniform enforcement of the Act in all industries," and to "particularly benefit vulnerable

---

[136] *Id.* at 73,954 n.47 (discussing how this scenario demonstrates indirect control).

[137] As noted by the Board, the rescission of the 2020 rule is independent of the 2023 Rule. *Id.* at 73,973. Should the Court find the 2023 Rule unlawful, the Court should affirm the Board's independent decision to rescind the 2020 rule because it is inconsistent with the common law.

[138] 45 F.4th at 46.

[139] *Id.* at 47.

[140] *N. Am. Soccer League,* 613 F.2d at 1382; *Tex. World Serv. Co.,* 928 F.2d at 1432; *Deaton, Inc.,* 502 F.2d at 1225, 1227-28.

[141] 88 Fed. Reg. at 73,986.

[142] *Id.* at 73,974.

employees who are overly represented in workplaces where multiple firms possess or exercise control, including immigrants and migrant guestworkers, disabled employees, and Black employees and other employees of color."[143] The Board is permitted to adopt "new interpretations of the Act so long as it demonstrates good reasons for the policy."[144] It has done so here.

## II.     The Final Rule facilitates meaningful collective bargaining.

The NLRA imposes an obligation on employers and unions under Section 8(d) of the Act, "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment."[145] The NLRA does not otherwise define with greater specificity whether, when, how, or over what topics the parties are to bargain. As the Fifth Circuit has recognized, "the mechanics of the bargaining process or the form that an agreement ultimately might take" are matters over which the Board and courts need not speculate as they "depend upon what each party offers and what each party is able to secure in the way of concessions."[146]

Consistent with these principles, the Rule ensures that any joint employer will be able to participate in meaningful collective bargaining with its employees' chosen bargaining representative. The Rule does so by first requiring that an employment relationship exist under Section 104.30(a), and then, enumerating a closed list of "essential terms and conditions of employment" that are central to employees' working lives in Section 104.30(d)[147]—one or more of these must be the under

---

[143] *Id.*

[144] *Id.* at 73,976 & n.324 (citing *Encino Motorcars LLC v. Navarro,* 579 U.S. 211, 221 (2016); *FCC v. Fox Television Stations,* 556 U.S. 502, 515 (2009)).

[145] 29 U.S.C. § 158(d).

[146] *Deaton, Inc.,* 502 F.2d at 1229 n.14 (rejecting the employer's "sense of the incongruity of making an employer bargain about matters over which in the past it has lacked the usual type of full control.")

[147] The Rule defines essential terms and condition of employment as follows: (1) wages, benefits, and other compensation; (2) hours of work and scheduling; (3) the assignment of duties to be performed; (4) the supervision of the performance of duties; (5) work rules and directions governing

the employer's control for joint-employer status to attach. Further, once a bargaining obligation is found, the Rule makes clear that a joint employer is only obligated to bargain over those subjects it controls.[148]

The Board explained that because the enumerated essential terms and conditions of employment "lie at the core of workplace issues appropriate for collective bargaining, a joint employer's control over any of these matters ensures that there is a basis for meaningful collective bargaining."[149] This policy advances employees' statutory right to bargain collectively through representatives of their own choosing, by ensuring that all parties with the ability to change working conditions or implement workplace policies are present at the bargaining table. The presence of such parties, in turn, will "help to avoid fruitless negotiations" and "lead to better outcomes overall."[150] And, by "limiting the list of essential terms and conditions of employment" to a discrete list, the Rule "helps provide clear guidance and a more predictable standard to parties covered by the Act."[151] In fact, it allows employers to "formalize their responsibilities and protect their interests in collective bargaining agreements they also negotiate and sign."[152]

Plaintiffs' disagreement with the Board's approach boils down to a mere restatement of their primary argument concerning the common-law standard of control, with the added reproach that an entity lacking sufficient control cannot meaningfully bargain.[153] But the Rule is not unlawful on this

---

the manner, means, and methods of the performance of duties and the grounds for discipline; (6) the tenure of employment, including hiring and discharge; and (7) working conditions related to the safety and health of employees. 88 Fed. Reg. at 74,017-18 (to be codified at § 103.40(d)).

[148] *Id.* at 74,018 (to be codified at § 103.40(h)(1)-(2)).

[149] *Id.* at 73,972.

[150] *Id.* at 73,986.

[151] *Id.* at 73,972.

[152] *Id.* at 73,986.

[153] Plaintiffs do not specifically challenge the Rule's enactment of 103.40(h)(1), which defines the scope of a joint employer's bargaining obligation; they just echo their central contention that the

ground because, as explained, it properly defines and analyzes control in connection with employer status. Claiming otherwise, Plaintiffs advance a series of fallacious arguments.

Initially, Plaintiffs are mistaken that the Rule "makes irrelevant the extent of control necessary to make informed decisions and tradeoffs at the bargaining table."[154] As the D.C. Circuit observed in *Herbert Harvey, Inc. v. NLRB*, it is beyond dispute that employers (joint or not) "may face practical limitations" in bargaining over conditions of employment."[155] Rarely, if ever, will any employer (joint or not) have total control over all relevant topics. "Absolute freedom to regulate the rewards and conditions of employment is perhaps a relatively scarce commodity, for adjustments as to either will ordinarily be reflected in the market price for the employer's product or service."[156]

So too for a joint employer, who holds sway over one or more essential terms. To be sure, Plaintiffs' concerns over the dynamics of bargaining are not unique to, or created by, this Rule. These uncertainties are endemic to employment situations where multiple entities share or codetermine matters affecting the same group of employees. After surveying myriad comments from diverse sectors of the economy,[157] the Board declined to give prescriptive instructions on bargaining mechanics, noting that "businesses remain free to structure their business operations however they wish. The rule creates no mandate to engage in bargaining on a multifirm basis whatsoever."[158]

---

Rule imposes a statutory duty to bargain on entities that have "limited control" and lack "sufficient control over all or most traditional mandatory subjects of bargaining." Pls.' MSJ 31-34.

[154] Pls.' MSJ 33-34.

[155] 424 F.2d 770, 779 (D.C. Cir. 1969).

[156] *Id.* at n.64.

[157] 88 Fed. Reg. at 73,980-81.

[158] *Id.* at 73,980 n.375. This is particularly sensible given that joint employment involves an incalculable array of possibilities for how entities may control terms and conditions of employment by either sharing in the decisionmaking, controlling separate aspects without overlap, or some combination, as these circumstances may dictate the structure of the bargaining relationship.

Plaintiffs' reference to "piecemeal bargaining" is similarly misdirected.[159] "Piecemeal bargaining" is a term of art describing a bad-faith tactic where a party (typically an employer) *insists* on siphoning certain issues away from the bargaining table, one by one, to separately negotiate before reaching an overall collective-bargaining agreement.[160] Courts recognize the tactic's twofold vices: it undermines the union's negotiating power by casting it as a "paper tiger"[161] and "impair[s] the ability to reach an overall agreement through compromise on particular items."[162] Joint-employer bargaining does not implicate these concerns. An employer's inability to bargain the full range of issues, and the possibility that fragmented bargaining will ensue, are not consequences of the divisive tactics of another, as in so-called piecemeal-bargaining situations. Such challenges are an inescapable reality under *any* joint employer standard—including the 2020 rule and the standards that preceded it. And the Rule, if anything, lends clarity and forestalls problems by explicitly providing that each joint employer is only required to bargain over those mandatory subjects of bargaining it controls.[163]

---

[159] Pls.' MSJ 34. Plaintiffs commit a similar error by relying on *First National Maintenance Corp. v. NLRB*, 452 U.S. 666 (1971). That decision addressed whether certain business decisions—namely, core entrepreneurial actions such as whether to close a portion of a business—were amenable to collective bargaining. *Id.* at 667. The Court said nothing about how to allocate bargaining responsibilities between joint employers. The Board nevertheless acknowledged *First National* in the Rule as binding precedent as to bargaining obligations. *See* 88 Fed. Reg. at 73,971 & n.257.

[160] *See, e.g.*, *Duffy Tool & Stamping, LLC v. NLRB*, 233 F.3d 995, 997–99 (7th Cir. 2000) (allowing piecemeal bargaining and piecemeal implementation "would empty the duty to bargain of meaning"); *see generally E.I. Du Pont de Nemours & Co. v. NLRB*, 489 F.3d 1310, 1317 (D.C. Cir. 2007); *Visiting Nurse Servs. of W. Mass. v. NLRB*, 177 F.3d 52, 58 (1st Cir. 1999).

[161] *Duffy Tool*, 233 F.3d at 998 ("by enabling the employer to paint the union as impotent, it would embolden him to hold out for a deal so unfavorable to the union as to preclude agreement.").

[162] *Visiting Nurse Servs.*, 177 F.3d at 59; *Duffy Tool*, 233 F.3d at 998.

[163] 88 Fed. Reg. at 73,968, 73,983. Subsections 103.40(h)(1) and (2) codify the requirement. *See generally NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 349 (1958) (mandatory subjects are those pertaining to wages, hours, and other terms and conditions of employment).

In the Rule, the Board squarely rejected the premise of Plaintiffs' argument that bargaining under the Rule is unworkable. In *Management Training Corp.*[164]—a case on which the Board relied heavily,[165] but Plaintiffs ignore—the Board considered what NLRA bargaining obligations should attach to a private-sector entity with close ties to an NLRA-exempt governmental entity. The Board held that if a private entity meets the statutory definition of "employer," the Board would assert jurisdiction, regardless of whether the daily work of the employees or other employment terms were determined by the governmental entity. Thus, the Board rejected the view that the private entity could not be a statutory employer if "the Government controls most of the employee's terms and conditions," and also rejected the argument "that bargaining is meaningless unless it includes the entire range of economic issues."[166]

The settled *Management Training* test does not require an employer to control all or most employment terms, but only enough to bargain effectively. The Rule captures that same sensible precept—if an entity "has an employment relationship" with employees and shares or codetermines "one or more of the employees' essential terms," it "[m]ust bargain collectively with the representative of those employees."[167] Put simply, an employer wielding important influence over employees' working lives will have an NLRA obligation to bargain over the terms and conditions that it controls. As the Board explained, those standards produce "no risk that the final rule will be applied broadly to encompass entities whose relationship to the performance of the work is clearly

---

[164] 317 NLRB 1355 (1995). Multiple circuit courts have since adopted the Board's general approach in this regard. *See Bannum Place of Saginaw, LLC v. NLRB*, 41 F.4th 518, 529 (6th Cir. 2022) (collecting precedent from four other circuits).

[165] *See, e.g.*, 88 Fed. Reg. at 73,964, 73,968, 73,983 & n.401.

[166] *Mgmt. Training Corp.*, 317 NLRB at 1357.

[167] 88 Fed. Reg. at 74,017-18 (to be codified at § 103.40(a)-(h)).

too attenuated to support finding that they are common-law employers."[168] The Rule, in short, responds to the bargaining-dynamics concerns that Plaintiffs raise and is a reasonable effectuation of Sections 1, 8(a)(5), and 8(d) of the Act.

## III. The Board acted lawfully under the APA by properly balancing the competing interests and statutory rights of employees, employers, and labor organizations.

Plaintiffs first argue that the Board overlooked "the dilemma" for employers who wish to "adopt general safety protocols on their property."[169] The Board did no such thing. Instead, the Board reasoned that control over workers' health and safety is an important aspect of determining whether an employment relationship exists, because the entity exercising control over health and safety may have "control over 'the physical conduct' of an employee 'in the performance of the service to the employer.'"[170] The Board, however, also noted that it "d[id] not seek to displace or interfere with those [existing health and safety] regulatory schemes," and that "contractual terms that do nothing more than incorporate regulatory requirements" would not create joint-employer liability.[171] Nothing about the Rule should incentivize rational employers to avoid protecting workplace safety, as Plaintiffs surmise. Instead, the Rule balances the right of employees to have

---

[168] 88 Fed. Reg. at 73,986; *see also id.* at n.273 (noting that the "vital second step" under *BFI 2015* and *BFI 2018*, which looks at how to permit meaningful collective bargaining, "is self-imposed" and not legally mandated; finding that "examination of whether the character and objects of a purported employer's control extend to essential terms and conditions of employment" satisfied *BFI 2018*).

[169] Pls. MSJ 35. Lifting a hypothetical from the dissent, Plaintiffs describe a cleaning company (CleanCo) that sends employees to clients under a contract that allows clients to stop employees from using certain supplies for safety reasons. Plaintiffs speculate that the Rule would compel CleanCo's clients to bargain with the employees' union. But from the sparse details provided, it is not possible to determine whether under Rule Subsection (a), the clients sufficiently control the *manner* of the employees' work or just the *ends*. Accordingly, whether the clients are common-law employers of CleanCo's employees is unknown, as the Board explained. *See* 88 Fed. Reg. at 73,986 (noting, *inter alia*, that "an entity may control a term of employment to which a bargaining duty attaches but not possess or exercise the requisite control over the performance of the work to be regarded as a common-law employer.").

[170] 88 Fed. Reg. at 73,965 (quoting Restatement (Second) of Agency § 2).

[171] 88 Fed. Reg. at 73,965; *see also Deaton, Inc.*, 502 F.2d at 1225.

present at the bargaining table those entities that control the means and manner of their work while accommodating employer compliance with other health and safety regulations. The Board's choice to weigh these competing interests as it does, does not contravene the APA as "a clear error of judgment," nor does it amount to improper reliance "on factors which Congress has not intended it to consider."[172]

Despite Plaintiffs' contention otherwise, the Board considered and responded to concerns raised by commenters regarding the Rule's impact on various industries, including franchisors, construction, and hospitals. Regarding franchisors, the Board recognized commenters' concerns about trademark and branding, and noted that "[m]any common steps franchisors take to protect their brands have no connection to essential terms and conditions of employment and therefore are immaterial to the existence of a common-law employment relationship."[173] The Board also responded to concerns from the construction industry, explaining that settled precedent "precludes treating a general contractor as the employer of a subcontractor's employees solely because the general contractor has overall responsibility for overseeing operations on the jobsite," and that the focus of its inquiry would remain on control of essential terms and conditions of employment.[174] As to hospitals, the Board declined (as it did with all other industries) to adopt any industry-specific standards or carveouts, instead explaining that it would "consider all relevant evidence regarding the surrounding context" in determining whether the joint-employer standard was met in particular cases.[175]

---

[172] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations omitted).

[173] 88 Fed. Reg. at 73,971.

[174] *Id.* at 73,970.

[175] *Id.* at 73,960. The court should reject the American Hospital Association (AHA)'s proposed brief as it raises novel arguments beyond the scope of the issues raised by Plaintiffs. AHA claims that the

Plaintiffs' remaining APA claims—that the Rule fails to provide *any* meaningful guidance and that the Board is foreclosed from deferring the fact-intensive common-law inquiry to adjudication[176]—are meritless. To pick just two examples of meaningful guidance, the Rule provides clarity to regulated parties by (1) moving from an open-ended list to "specifically enumerating the essential terms and conditions of employment,"[177] and (2) defining the scope of bargaining obligations in the event a joint-employer relationship is found.[178] The Rule thus easily withstands the "no meaningful guidance" inquiry of *ACA International v. FCC*.[179] Further, the Board's reasoned decision to defer issues of joint employment to case-by-case adjudication is necessary due to the fact-intensive nature of the common-law employment examination, in line with relevant precedent. If, as the Fifth Circuit has recognized, "minor differences in the underlying facts might justify different findings on the joint employer issue," any attempt to resolve all conceivable variations through rulemaking would be a Sisyphean task.[180]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied and the Board's Cross-Motion for Summary Judgment should be granted in its entirety.

---

Board did not meaningfully address its comments and that the Rule disproportionately harms hospitals. Both arguments are distinct from Plaintiffs' arguments, and courts may not consider amicus issues or arguments outside those properly raised by parties. *New Jersey v. New York*, 523 U.S. 767, 781 n.3 (1998); *Cellnet Comms., Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998); *see also Squyres v. Heico Cos., LLC*, 782 F.3d 224, 233 n.5 (5th Cir. 2015). In any event, the Board fully considered and responded to the AHA's comments in the Final Rule. *See* 88 Fed. Reg. at 73,960.

[176] Pls.' MSJ 38.

[177] 88 Fed. Reg. at 73,964; *see also id.* at 73,986 ("offering an exhaustive list of the essential terms and conditions of employment that may give rise to a joint-employer finding and detailing the forms of control that the Board will treat as probative of joint-employer status"); *see also id.* at 74,017-18 (to be codified at § 103.40(d)).

[178] *Id.* at 73,964.

[179] 885 F.3d 687, 700 (D.C. Cir. 2018) (quoting *U.S.P.S. v. Postal Regulatory Comm'n*, 785 F.3d 740, 754 (D.C. Cir. 2015)).

[180] *Texas World Serv. Co.*, 928 F.2d at 1432 (quoting *N. Am. Soccer League*, 613 F.2d at 1382-83).

Respectfully submitted,


/s/ Tyler Wiese
TYLER WIESE
*Senior Attorney*
Minnesota Bar No. 0329601
Tel: (952) 703-2891
tyler.wiese@nlrb.gov

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
(No official bar number in Maryland)
Tel: (202) 273-2938
kevin.flanagan@nlrb.gov

CHRISTINE FLACK
*Supervisory Attorney*
(No official bar number in Maryland)
Tel: (202) 273-2842
Fax: (202) 273-4244
christine.flack@nlrb.gov

SHAWNNELL T. BARNETT
*Attorney*
DC Bar No. 1531575
Tel: (202) 316-6397
shawnnell.barnett@nlrb.gov

National Labor Relations Board
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE
Washington, DC 20003
Fax: (202) 273-4244

*Attorneys for Defendants*

Dated: December 18, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 18, 2023, I filed the foregoing document, Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, with this Court using the CM/ECF filing system, and a copy is being served on the ECF Filers electronically by the Notice of Docket activity.

/s/ Tyler Wiese
TYLER WIESE
*Senior Attorney*
Minnesota Bar No. 0329601
Tel: (952) 703-2891
tyler.wiese@nlrb.gov

45